Filed June 2, 1886.

---

No. 13,099.

## THE BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY v. THOMPSON ET AL.

COUNTY COMMISSIONERS.—*Power of, to Purchase Toll-Bridge Across Stream which Forms County Boundary.*—The board of commissioners of one county has no power to purchase a toll-bridge across a stream which forms the boundary line between two counties, without the concurrent action of the board in the adjoining county or notice to such board.

From the Fountain Circuit Court.

*L. Nebeker* and *H. H. Dochterman,* for appellant.
*W. H. Thompson, J. West* and *W. E. Baker,* for appellees.

MITCHELL, J.—Upon the petition of sundry citizens the board of commissioners of Fountain county, at their regular session in December, 1885, made an order declaring that the purchase of a certain toll-bridge across the Wabash river was for the public good.

The order recited further, that in the event it could be had at a reasonable price, the bridge should be purchased by the

board, and made a free bridge, and that the amount neces-sary to pay for the same should be paid out of any funds in the county treasury not otherwise appropriated.

The appellees, who were resident taxpayers of the county, filed their bill, in the Fountain Circuit Court, setting forth the facts at large, and praying that the board be enjoined from purchasing and paying for the bridge out of the public funds.

The Wabash is the boundary line between the counties of Fountain and Warren, and the appellees claimed that by rea-son of that fact, and because one of the approaches and one-half the bridge were in Warren county, the proposed purchase was outside and beyond the jurisdiction of the board of com-missioners of Fountain county.

The appellants filed an answer, but all the facts having any practical relation to the case are undisputed. Some question is made concerning the exact location of the boundary line between the two counties, but whether it is in the centre, or at one side or the other of the river, is of no moment, as in either event, it is conceded, part of the bridge and one of the approaches are in Warren county.

The single question is, has the board of commissioners of one county the power to purchase a toll-bridge across a stream which forms the boundary line between two counties, without the concurrent action of the board in the adjoining county, or without notice to such board?

Power to purchase toll-bridges is given in section 5801, R. S. 1881, in the following language: "The board of com-missioners of any county may, whenever they shall deem it proper and for the public good, purchase any toll-bridge or buy any private interest therein, and order the same to be paid for from the county treasury."

It is, of course, not disputed but that toll-bridges, the pur-chase of which is authorized by this statute, are such as in some way facilitate public travel in the county out of whose public treasury they are to be paid for. That county com-missioners are not authorized to purchase toll-bridges gen-

erally and without limit, and that the public, whose good is to be conserved in making such purchases, consists of those communities and people of whom the commissioners are the representatives, is uncontroverted. With the public good outside the county the board of commissioners have manifestly no official concern.

Inasmuch, therefore, as the statute conferring the power to purchase "any toll-bridge" is not to be considered in the broad sense of a grant of power to purchase toll-bridges without regard to their location or situation, the inquiry comes, what are the limitations upon the power of the county boards in respect to the purchase of such structures?

The Legislature having manifested a certain policy in regard to the erection and maintenance of public bridges, having charged upon the several boards of commissioners the duty of keeping the bridges in their respective counties in repair, and having imposed certain duties on township trustees and road supervisors, in relation to all bridges within their respective jurisdictions, we are not to suppose the statute authorizing the purchase of toll-bridges was intended to introduce into the existing economy an anomalous class of structures, concerning which the power and duty of public officers should be different from that pertaining to public bridges generally.

It may therefore be assumed that a board of commissioners has no power to purchase a toll-bridge which is not on a public highway, or at a place where they could not erect a bridge; nor can they purchase a bridge at any place where such purchase would seem to impose upon the county duties or obligations different from those provided by law. *Driftwood, etc., T. P. Co.* v. *Board, etc.,* 72 Ind. 226 ; *Board, etc.,* v. *Deprez,* 87 Ind. 509 ; *Board, etc.,* v. *Rushville, etc., G. R. Co.,* 87 Ind. 502.

The statute in reference to the purchase of toll-bridges must, therefore, be set into the general legislation upon the

subject of bridges, and must be construed and harmonized accordingly.

The erection and maintenance of bridges across streams which form the boundary line between counties have been provided for by statute. Sections 2880 to 2884, R. S. 1881; Acts 1885, p. 58.

Such bridges can only be erected by the concurrent action of the boards of commissioners of the counties, of which the stream proposed to be bridged forms the boundary line. *Browning* v. *Board, etc.*, 44 Ind. 11. In the event the board of one of such counties fails or refuses after thirty days' notice to concur, or act in relation to the matter, the other may proceed. By the terms of the act of 1885, one county, in conjunction with a township, may erect or repair such a bridge without the concurrence of the adjacent county, where a tax is voted by the legal voters of any township of such county which bounds the stream.

Having no power to build a bridge except in the manner prescribed, it can not be assumed that a county board may accomplish indirectly that which they had no power to do directly. They can not buy a bridge, where they might not, under existing circumstances and like conditions, build one. Conversely, it can hardly be doubted but that, under the same circumstances which would authorize the erection or repair of a bridge, such board may exert the power conferred by statute, and purchase one already existing.

Section 2884 enacts that "Each county shall be regarded as the owner of an interest in any bridge erected in pursuance of this act, and each shall have a voice in regulating the use thereof." Section 2892 makes it the duty of the board of commissioners of each county to cause "all bridges therein to be kept in repair."

It results that all bridges, or parts thereof, or approaches thereto, which are authorized and exist as county bridges, on county highways, are subject to the jurisdiction of the county in which they are situate, and the repair and maintenance of

such bridges are charged upon the county without regard to the fact that such bridge may have been erected or purchased.

A board of commissioners can not, however, assume any liability beyond the limits of the county, nor can it acquire any extra-territorial control over a bridge after it is erected or purchased. On certain prescribed conditions, where a stream is the boundary line between two counties, one county may, without the consent of the other, impose upon the latter the ownership of, and incidental liability of keeping in repair, the approach to and one end of a bridge, but this can not be done, either by erecting a new bridge or purchasing one already existing, without first giving notice, and inviting, as the statute provides, the co-operation of the county to be thus affected. Until this is done, there is no power to proceed either to erect or purchase a bridge, which shall impose such liability.

Authority to purchase toll-bridges was conferred, to the end that bridges which were owned by private persons or corporations, and which formed part of the public highways, might, when the public good required it, be converted into free bridges. Primarily, the purpose was not that counties might buy toll-bridges as such, but that any private interest or ownership which might be held in bridges which formed part of the public highways, might be extinguished in favor of the public. When such a bridge is purchased, and the private interest extinguished, it take its place in the system of public bridges in the county or counties in which it is situate. The several municipalities then become subject to all the rights and liabilities in respect to it, that pertain to all other public bridges.

There can be no difficulty in applying the statute for the erection of bridges over streams forming the boundary between counties, to the purchase of toll-bridges similarly situated. There was no error.

The judgment of the circuit court is affirmed, with costs.

Filed June 1, 1886.