Filed May 16, 1891.

No. 15,248.

BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY *v.* BOARD OF COMMISSIONERS OF WARREN COUNTY.

STATUTE.—*Rules for Construing.*—In the construction of a statute the court, in order to ascertain the intention of the Legislature, will look to the letter of such statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law, to the sources from which it was derived, to the general principles of equity, to its effect, and to the condition of affairs when it was enacted.

BRIDGES.—*Bridge Over Boundary Stream.—Cost of Construction, or Repairing.—Consent.*—One county can not purchase nor construct a bridge over a stream forming the boundary line between it and an adjoining county, and compel such adjoining county to pay its proportionate part of the expense; nor can it compel such adjoining county to pay its proportionate part of the cost of repairing such a bridge. Such adjoining county, to be liable, must consent to such purchase, or erection, and mere silence, when the first county serves notice of its intention to purchase, or build, such a bridge, is not such a consent as will render such adjoining county liable to pay a proportionate share of the cost.

SAME.—*A County May Build a Bridge Over its Boundary Line.*—A county may purchase, or build at its own expense, a bridge over a stream between it and an adjoining county; which bridge, when so purchased or built, will belong to the county buying, or building it.

From the Montgomery Circuit Court.

*T. F. Davidson* and *H. H. Dochterman,* for appellant.
*C. V. McAdams,* for appellee.

COFFEY, J.—This was an action by the appellant against the appellee to recover for money expended by the former in the purchase of a toll bridge across the Wabash river, to recover for money expended in the construction of a bridge, and for money expended in the repair of a bridge.

The complaint consists of three paragraphs.

The material facts alleged in the first paragraph of the complaint are, that the board of commissioners of Fountain county in the year 1886 purchased a certain described toll bridge across the Wabash river, near the city of Covington, part of which bridge, with its approaches, is in Fountain county and another part in Warren county. The bridge was purchased for the purpose of making it free to the public, and the price paid was $18,000, all which was paid by Fountain county. On the 11th day of June, 1886, the board of commissioners of Fountain county, when in regular session, found and entered of record that public utility and convenience required the purchase of said bridge and the approaches thereto from the then owners, and that the same should be made free and subject to the public use without the payment of toll, and at the same time entered of record a resolution expressing and declaring its willingness to aid and join the board of commissioners of Warren county in the purchase of said bridge and approaches, and ordered of record that a certified copy of the finding and resolution should be made out and delivered to and served on the board of commissioners of Warren county. A certified copy of these proceedings was served upon and delivered to the board of commissioners of Warren county on the 15th day of the same month. The board of commissioners of Warren county neglecting and refusing to join in the purchase of the bridge, Fountain county purchased it on the 21st day of July, 1886, and dedicated it to the public use.

Board of Comm'rs of Fountain Co. v. Board of Comm'rs of Warren Co.

This paragraph seeks to recover from the appellee a portion of the money paid by Fountain county for the bridge, and is drawn upon the theory that Warren county is liable to pay for the bridge a sum in the proportion its taxable property bears to the taxable property of Fountain county.

It appears from the allegations in the second paragraph of the complaint that for a long time prior to the year 1886 the *Attica Bridge Company* owned a toll bridge across the Wabash river, where the river forms the boundary between the counties of Fountain and Warren, at the city of Attica, in Fountain county. In the year 1886 the toll bridge was destroyed by a cyclone, and the bridge company declining to rebuild the same, the board of commissioners of Fountain county purchased its interest in the abutments, piers and approaches, and erected thereon an iron bridge at a cost of $45,-000.

This paragraph contains the same allegations as the first in relation to the findings, orders, resolutions and notice to the board of commissioners of Warren county, and alleges that the board of commissioners of Warren county declined to take any action thereon, and declined to join with the board of commissioners of Fountain county in the purchase of said abutments, piers and approaches, and in the erection of said bridge.

This paragraph seeks to recover from Warren county its proportion of the said sum of forty-five thousand dollars.

The third paragraph of the complaint alleges, substantially, that in the year 1886 there was, and still is, a public bridge across the Wabash river at the city of Covington, where said river forms the boundary line between the counties of Fountain and Warren ; that said bridge was jointly owned and under the control and management of the boards of commissioners of Fountain and Warren counties ; that the same became so out of repair that it was dangerous to travellers, and that after the necessary findings, orders, resolutions and notice to the board of commissioners of Warren county, the

board of commissioners of Fountain county proceeded to and did repair the bridge at a cost of sixteen hundred dollars.

This paragraph seeks to recover from Warren county its proportion of the costs of the repairs therein named.

To each of these several paragraphs the court sustained a demurrer. The questions presented for our consideration relate to the propriety of this ruling.

The question presented by the demurrer to the first and second paragraphs of the complaint involves the power of the board of commissioners of Fountain county to impose upon the county of Warren the indebtedness described in said paragraphs, without the consent of the latter county. The solution of the question depends upon the construction to be placed upon sections 2880 to 2884, R. S. 1881.

It is contended by the appellant that the service of the notice, described in the complaint, upon the board of commissioners of Warren county, had the force and effect of the service of an ordinary summons, and that the failure of such board to take action, and join with the board of commissioners of Fountain county in the purchase of the bridge named in the first paragraph, and in the erection of the bridge named in the second paragraph, within thirty days from the service of such notice, conferred upon the latter board the power to purchase the first bridge and erect the second, and charge Warren county with its proportion of the expense incurred in such purchase and erection.

The primary object in construing any statute is to arrive at the intention of the Legislature which enacted the statute to be construed. In doing so we will look to the letter of the statute, to the statute as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, and like matters. *Hunt* v. *Lake Shore*, etc., *R. W. Co.*, 112 Ind. 69.

It is not to be expected that a statute which takes its place in a general system of laws, will be so perfect as to require

no support from the rules and statutes of the system of which it becomes a part.

In construing a statute it is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the effect of the statute and to the condition of affairs when the statute was enacted. *Humphries* v. *Davis,* 100 Ind. 369.

The construction contended for by the appellant is in conflict with the well known doctrine, that the board of commissioners of each county in the State is vested with the discretionary power to determine when and where bridges shall be constructed. Section 2885, R. S. 1881; *Bingham* v. *Board, etc.,* 55 Ind. 113; Elliott Roads and Streets, p. 35–38; *State, ex rel.,* v. *Board, etc.,* 125 Ind. 247.

If the board of commissioners of Fountain county possesses the power to purchase or construct a bridge across a stream forming the boundary line between Fountain and Warren counties without the consent of the latter, and charge it with its proportion of the expense of such purchase or construction, then the board of commissioners of Warren county is wholly deprived of its discretionary power in the matter, and is made subject to the discretion of the board of commissioncas of Fountain county in whose selection the people of Warren county have no voice.

How far such a construction is in conflict with the recognized doctrine of local self-government we need not stop to inquire. If the power contended for on this appeal exists, it is certain that the board of commissioners of Fountain county, in whose election the people of Warren county could not participate, and which does not represent them, may, without their consent, burden them with onerous debts which must be paid by taxation levied upon their property. Such a construction would seem to be at variance with the whole theory upon which our system of laws is constructed.

Furthermore, if the construction contended for by the appellant is to be adopted we have the anomalous case of a tribunal in one county serving summons in another county, beyond its ordinary jurisdiction, upon another tribunal of equal dignity and jurisdiction, and entering judgment and making orders against the tribunal so served, as upon a default. Certainly a construction so much at variance with our general system of laws, and followed by such unusual consequences, should not be adopted unless the language used is such as is not susceptible of any other reasonable construction, and this brings us to a consideration of the statute in question.

The original statute upon the subject we are now considering went into force May 14th, 1869. (Acts 1869, Sp. Session, p. 27). It included what are now sections 2880 to 2884, R. S. 1881. Section 2880, as it existed prior to its amendment in 1881 (Acts 1881, p. 87), provided that when public convenience required the erection or repair of any bridge across any stream forming the boundary line between two counties in this State, upon application therefor to the board of county commissioners of either county, such board should, if it thought it expedient, declare its willingness to aid in the erection or repair of such bridge, by resolution or order, and should cause notice thereof to be given to the board of commissioners of the other county interested therein. If the board of commissioners of both counties made such order or resolution, they were required, by concurrent resolution, to cause a survey and estimate to be made, submitting plans and specifications therewith, by some competent person, to be presented to their respective boards of commissioners at some specified time and place at or near the site of such contemplated bridge, where such boards were required to meet in joint session, to estimate and determine the kind of bridge which was to be erected, and the manner and time when payments should be made for the erection or repair of such bridge.

By sections 2881, 2882, 2883 and 2884 it was provided that such boards while in joint session should select one or more superintendents, who should have control of the erection or repair of the bridge, under such regulations as the boards might prescribe; make the necessary appropriations to pay for the same, which should be in proportion to the taxable property of the counties interested. Such bridge, when completed, belonged to the two counties, and each had a voice in regulating its use.

This law remained unchanged from the 14th day of May, 1869, until the 19th day of September, 1881.

The act provided for the erection or repair of one class of bridges only; that is, a class to be constructed by the mutual agreement and concurrence of the boards of commissioners of the two counties interested and bounded by the stream to be bridged.

Under this law it was held that such stream could not be bridged without the joint action of the county board of both counties, and that an attempt of the board of commissioners of one county to erect a bridge across such stream, without the concurrence of the board of commissioners of the other county, was without color of law. *Browning* v. *Board, etc.*, 44 Ind. 11.

The Legislature of 1880-81 amended section 2880 by adding thereto the following proviso: "*Provided*, That whenever the board of county commissioners of any county shall have notified the board of county commissioners of any county interested in the erection or repair of any bridge, as specified in this section, and such board of county commissioners so notified, shall fail or refuse, for the period of thirty days, to accept or to act on the same, by joining in the building or repair of such bridge, then, in that event, the board of county commissioners of such county passing such order, may, if in their opinion public convenience requires the same, build or repair said bridge, under the same rules and regulations as are now or may be in force for the building and re-

pair of bridges wholly within the county, after first having obtained the consent and permit of the land-owner in the adjoining county, whose land will be occupied by such bridge, to the building of the same." (Acts 1881, p. 87).

The statute, as amended, provides for two classes of bridges, namely :

*First.* Such bridges as are constructed across a stream which forms the boundary line of two counties, built by the mutual agreement and concurrence of the boards of commissioners of the two counties.

*Second.* Such bridges as are constructed across streams constituting the boundary line between two counties, built by the board of commissioners of one county only, under such rules and regulations as are in force for the building or repair of bridges wholly within one county.

In our opinion sections 2881 to 2884, R. S. 1881, inclusive, have no application to bridges of the second class. They were enacted with reference to the first class only, as at the time they were enacted no provision existed for the second class.

It doubtless often occurs that it is of great importance and convenience to one county to bridge a stream forming the boundary line between it and another county, while such other county has no particular interest in the bridge. Under the construction placed upon the statute prior to its amendment, the county interested had no power to act, unless the adjoining county would join in its erection, and pay a proportion of the expense. We think it was the intention of the General Assembly, when it passed the amendment in question, to confer on counties desiring to do so the power to construct bridges on streams forming the boundary line between them and other counties at their own expense, where the adjoining county was unwilling to join in the construction of such bridge. A bridge thus purchased, or constructed, belongs to the county purchasing, or constructing, the same, and the adjoining county has no interest therein, nor any voice in its management.

This construction harmonizes the statute before us with our general system of jurisprudence, and does no injustice to either party. It leaves counties which are sufficiently interested in the construction of a particular bridge to warrant them in incurring the expense, to construct bridges across streams forming their boundary lines; while it relieves counties who have no such interest from the burden of paying for the construction or repair of bridges in which they have but little, if any, interest.

In our opinion Warren county is not liable to the county of Fountain for any portion of the money paid for the purchase of the bridge named in the first paragraph of the complaint, nor is it liable for any portion of the money paid for the erection of the bridge named in second paragraph of the complaint.

This conclusion is not in conflict with the *Board, etc.,* v. *Thompson,* 106 Ind. 534, as the only question there involved, and the only question that could be adjudicated, related to the power of the board to purchase the bridge described in the complaint in that case. No question of that character is involved in this case.

It is conceded here, as we understand the briefs, that the money expended for the repairs named in the third paragraph of the complaint was for repairs made on the bridge described in the first paragraph of the complaint.

As we have seen, Warren county has no interest in that bridge, and no voice in its management or use. It is the property of Fountain county, and is governed by the same rules as if it were wholly located in that county. Warren county is not liable for any repairs made upon such bridge by the county of Fountain.

The circuit court did not, in our opinion, err in sustaining the demurrer to each paragraph of the complaint before us.

Judgment affirmed.

Filed March 10, 1891; petition for a rehearing overruled May 16, 1891.