BOARD OF COMMISSIONERS OF THE COUNTY OF JACKSON *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF WASHINGTON.

[No. 17,897. Filed October 21, 1896.]

STATUTES.—*Construction Of.*—*Validity of Statutes.*—The validity of an act of the general assembly will not be passed upon where the merits of the litigation may be passed upon without so doing. *p. 144.*

SAME.—*Construction Of.*—*Joint County Bridges.*—Section 1, Acts of 1893 (Acts 1893, p. 46; 3253, Burns' R. S. 1894) providing for the construction and repair of bridges across a stream forming the boundary line between counties, is amendatory to section 2882, R. S. 1881, and raises a conflict as to the law intended to be amended, but the provisions of the amendment by express reference to the section amended is made to depend upon same, and the provisions of the original section must be complied with before the provisions of the amendatory section can be enforced. *p. 145.*

Board Com'rs Co. of Jackson *v.* Board Com'rs Co. of Washington.

PLEADING.—*Complaint by One County Against Another to Recover Proportionate Costs of Constructing Bridge on Boundary Line.*— A complaint by one county against another to recover its proportionate share of the cost of constructing a bridge upon the boundary line must show a compliance with section 2880 R. S. 1881 (3251, Burns' R. S. 1894) requiring the concurrence of the boards of commissioners of the two counties on the question of public convenience of the bridge, and that both boards considered a survey, or plans and specifications with a view to the exercise of their judgment upon the character of the bridge. *p. 146.*

From the Washington Circuit Court. *Affirmed.*

*D. A. Kochenour*, for appellant.

*J. H. Masterson*, for appellee.

HACKNEY, J.—The appellant sued to recover the alleged proportion, chargeable to the appellee, of the costs of constructing a bridge across the Muscattatuck river, at a point where said river forms the boundary line between the counties of Washington, Jackson and Scott. The complaint alleged that on the 24th day of July, 1893, the said board of commissioners of the county of Jackson, of the State of Indiana, being duly convened in special term at Brownstown, in said Jackson county, being duly petitioned by divers citizens and taxpayers of said county for the erection of a bridge across said Muscattatuck river at the point above mentioned, considered said petition, and, after hearing evidence touching the same, and being sufficiently advised in the premises, then and there made an order, which was duly entered of record, reciting therein that said board of commissioners are of opinion that public convenience requires a bridge across the Muscattatuck river at said point, and that it would be expedient to erect the same; that the willingness of the board of commissioners of Jackson county is hereby announced and declared to make and pass with the boards of commissioners of the counties of Washington and Scott a concurrent resolution and

order to cause a survey and estimates to be made, with plans and specifications prepared by some competent person, to be presented to said boards at some specified time and place near the site of the bridge proposed to be erected, when and where such boards may meet in joint session to estimate and determine the kind of bridge which shall be erected, and the manner of paying for the same, and the part that each county shall be required to pay under the law.

Said board of commissioners of the county of Jackson, then and there, in said order, fixed Friday, the 11th day of August, 1893, at 10 o'clock a. m., as the time of meeting the boards of commissioners of the counties of Scott and Washington, at the site of the proposed bridge, in joint session, and that a certified copy of this order and proceedings be served upon the auditor of Scott county and the auditor of Washington county by the sheriff of Jackson county; that the board of commissioners of the county of Washington was duly notified of the foregoing action of the board of commissioners of the county of Jackson, as above set out; that afterwards, to-wit: on the said 11th day of August, 1893, the said boards of commissioners of Jackson, Washington and Scott counties, pursuant to the foregoing orders of the board of commissioners of the county of Jackson, and on call of the auditors of said counties, met in joint session near Blunt's Ferry, and the site of the proposed bridge; that a joint session of the boards of said three counties was then and there duly convened, organized and held. A vote was taken, by counties, on the advisability of building said proposed bridge. Scott and Washington counties voted against the erection of said bridge, and Jackson county voted for its erection; that Scott and Washington counties refused to join in the construction of said bridge, and said joint session was duly adjourned.

Board Com'rs Co. of Jackson *v.* Board Com'rs Co. of Washington.

The facts were further alleged as to the publication of notice for bids, the awarding of contracts, the construction of the bridge, the payment therefor by the appellant and the amount sought to be charged against the appellee.

The court sustained the appellee's demurrer to said complaint, and that ruling constitutes the basis of the only assignment of error in this court.

The following are the statutory provisions under which the appellant asserts the liability of the appellee: "Whenever public convenience shall require the erection or repair of any bridge across any stream forming the boundary line between two counties within this State, upon application therefor to the board of county commissioners of either county, such board of county commissioners may, if they think it expedient, declare their willingness to aid in the erection or repair of such bridge by resolution or order, and shall cause notice thereof to be given to the board of county commissioners of the other county interested therein. And whenever it may be ascertained that the board of county commissioners of both counties have made such order or resolution, such board of county commissioners shall, by concurrent resolution, cause a survey and estimate to be made, submitting plans and specifications therewith, by some competent person, to be presented to their respective boards of commissioners at some specified time and place at or near the site of such contemplated bridge, when such boards of county commissioners shall meet in joint session to estimate and determine the kind of bridge which shall be erected, and the manner and time when payments shall be made for the erection or repair of such bridge: *Provided,* That whenever the board of county commissioners of any county shall have notified the board of county commissioners of any county interested in the

erection or repair of any bridge, as specified in this section, and such board of county commissioners so notified, shall fail or refuse, for the period of thirty days, to accept or to act on the same by joining in the building or repair of such bridge, then, in that event, the board of county commissioners of such county passing such order, may, if in their opinion public convenience requires the same, build or repair such bridge, under the same rules and regulations as are now or may be in force for the building and repair of bridges wholly within the county, after first having obtained the consent and permit of the land-owner in the adjoining county, whose land will be occupied by such bridge, to the building of the same." Section 3251, Burns, R. S. 1894 (2880, R. S. 1881).

"Section 1.    Be it enacted by the General Assembly of the State of Indiana, That section 2 of the above entitled act, the same being section 2882 of the Revised Statutes of 1881 of the State of Indiana, be amended to read as follows: Section 2. It shall be the duty of such boards of county commissioners, in joint session, to make such appropriation for their respective counties as will make an equitable proportion to each county of the whole cost of construction or repairs of such bridge; and such appropriation shall be in proportion to the taxable property of the two or more counties, and all taxes hereafter levied for the erection, repair or purchase of any such bridge so situated shall be levied in accordance with this act; and when the requirements of the first section of this act have been complied with, and one of the counties which will be affected by the erection, repairing or purchasing of said bridge refuses to join in the construction, repairing or purchasing of such bridge, the county desiring such improvement may construct, repair or purchase such bridge, as provided in said first

section of this act, and when the cost of such bridge or repairs does not exceed $3,500, the county making such improvement shall be entitled to recover from the adjoining county affected by such improvement the amount that said county should have paid had she joined in the said improvement, said claim to be enforced as other claims are enforced against counties in this State; and when such claim is litigated the judgment shall include a reasonable attorney fee for the plaintiff's attorney." Section 1, Acts of 1893 (Acts 1893, p. 46; Burns' R. S. 1894, section 3253).

The constitutionality of the section quoted from the acts of 1893 is denied by the appellee in support of the ruling of the lower court. It is urged that this section violates section 10, Art. 6, of the State Constitution, which is that "The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character."

The argument is that this provision of the constitution must be construed as if it withheld from the general assembly all authority upon the subject not within the limits of that granted; that the authority given is to grant power to the boards to act within and for their respective counties and for local purposes, and that the negative implied from the constitution is against the granting of powers to be exercised without affecting interests beyond the limits of such counties respectively. The section of the act in question, it is claimed, permits the board of one county to arbitrarily judge of the interests of another county, transact business with relation to bridges, affecting such other county, and charge the latter with the cost thereof, thus exercising extra territorial powers.

It will be seen that the section of the act of 1893, above quoted, is an amendatory section, and that its

reference to the section of the act of 1869, which it seeks to amend, as section two of said act, "being section 2882 of the Revised Statutes of 1881," raises a conflict as to the law intended to be amended. Section 2882, R. S. 1881, was section 3 of the Act of 1869. This conflict, it is urged, renders the act of 1893 void for uncertainty.

It is the generally recognized rule of the courts that the validity of an act of the general assembly will never be passed upon where the merits of the litigation may be passed upon without doing so. While we do not assert the absence of constitutional authority in the general assembly to grant to the board of one county the power to make improvements for another county or counties, and charge the latter with the same, against the judgment and consistent protest of such other county or counties, we do maintain that a construction which would lead to results so dangerous to the public welfare will be avoided if possible. It will not readily be believed that the general assembly intended to invest one minor governmental subdivision of the State with power to construct public improvements for others of such subdivisions, regardless of majorities in numbers of counties and numbers of population, regardless of the financial condition of such other subdivision and regardless of the reasonable privilege of each county to judge for itself of the wisdom of a step affecting its interests and of its ability to meet the expense of such step. If, therefore, the section of the act in question will bear a reasonable construction which will obviate the arbitrary and unreasonable power contended for by the appellant, that construction must be adopted.

It will be observed that the two statutory provisions above quoted are now parts of a system provided for the construction, by counties, of bridges over streams

which form the boundary line between such counties. The provisions of the latter section, by express reference to the former, are made to depend upon it. By the latter section it is provided that *"when the require ments of the first section of this act have been complied with,* and one of the counties which will be affected by the erection * * of such bridge, refuses to join in the construction," the county desiring the improvement may proceed with it, and, upon conditions named, collect a part of the cost from the county so refusing. The complaint, in this case, to withstand the appellee's demurrer, should have shown that the "requirements of the first section" had been complied with. This it did not do.

The first of the sections above quoted, as originally passed (Acts Sp. Ses. 1869, p. 27), was, in effect, that part now preceding the proviso, and, before its amendment in 1881 (Acts 1881, p. 87), no authority existed in one county to build a bridge across a boundary stream. That authority came with the amendment of 1881. *Board, etc.,* v. *Board, etc.,* 128 Ind. 295.

The requirements of that section, as orginally passed and as it now stands, where more than one county is to be charged with the costs of such bridge, are (1) that public convenience shall require the bridge; (2) that the application therefor be made to one of the boards interested; (3) that such board shall declare, by order or resolution, its willingness to aid in building the bridge; (4) that said board shall give notice thereof to the board of the other interested county; (5) that when both boards interested shall, by resolution, express such willingness, and (6) where such boards, by concurrent resolution, cause a survey to be made and plans and specifications to be prepared, to be considered at a joint meeting to be held

tc determine upon the kind of bridge to be built and how it shall be paid for. These requirements complied with, a basis exists upon which the counties unite in making the improvement.

The act of 1893, as we have seen, provides that one county may build a bridge at the joint expense of several counties "when the requirements of the first section," above pointed out, "have been complied with, and one of the counties which will be affected * * * refuses to join in the construction." This implies that when two counties, after notice, concur in the question of the public convenience of the bridge, when they incur the expense of survey, plans and specifications, when they exercise a judgment and discretion as to the character of bridge required, and as to the time and manner of meeting the expense, and when they have expressed a willingness to aid in making the improvement, neither may, by then refusing to join, defeat the improvement at such joint expense.

One county may not build a bridge at the joint expense of several counties under the same conditions that it may build such bridge at its own expense. By section 2880, *supra*, only one of several counties interested may build a bridge at its own expense in the event of the failure or refusal for thirty days of another county to join, and that is the county giving the notice. By the act of 1893, where it is sought to charge any county refusing to join, it is provided that the county desiring the improvement may proceed, without regard to the question as to which county gave the notice or which made the refusal. It is clear, therefore, that the legislature intended to provide a different rule where one county should build at its own expense from that provided where a part of the expense might be enforced against another county.

The complaint before us fails to aver facts disclosing any concurrent action by the several boards expressing a willingness to join in the improvement, and it does not appear that the several boards considered a survey or plans and specifications with a view to the exercise of any judgment upon the character of the bridge necessary. It is apparent, therefore, that the requirements of section 2880, R. S., *supra*, were not complied with so as to permit the appellant to construct the bridge and charge the appellee with a part of the costs thereof.

The judgment of the circuit court is affirmed.