CONN *v.* BOARD OF COMMISSIONERS OF CASS COUNTY.

[No. 18,785. Filed November 29, 1898.]

DRAINS.— *Construction. — Payment. — County Commissioners.*—The board of county commissioners is not the trustee of the fund created by the sale of bonds for the construction of a drain, under the provisions of section 5690, *et seq.*, Burns' R. S. 1894, and an action cannot be sustained against such board to compel payment for the construction of a section of a drain under said statute. *pp. 520-523.*

STATUTORY CONSTRUCTION.—*Drains.*—Where a statute is a part of a general system of laws upon the same subject its construction or interpretation may receive support from the rules and provisions of that system. *p. 526.*

DRAINS.— *Construction.— Payment.*—Where a contractor has completed a section of a public drain under the provisions of section 5690, *et seq.*, Burns' R. S. 1894, he should notify the engineer, who should inspect the work, and if he find that it has been completed according to the terms of the contract he should accept it and issue to the contractor a certificate to that effect stating the amount due, and such certificate when presented to the county auditor authorizes the auditor to draw a warrant upon the proper funds in the hands of the county treasurer for the payment thereof. *pp. 523-525.*

From the Cass Circuit Court. *Affirmed.*

*D. P. Baldwin*, for appellant.

*Nelson & Myers*, for appellee.

JORDAN, J.—Appellant sued appellee, the board of commissioners of the county of Cass, and by his complaint sought to invoke the chancery powers of the court to compel appellee to account to him, and pay the judgment which he demanded against it, out of a certain fund created by the sale of bonds to defray the expenses of constructing a public ditch in Cass county. Appellee appeared to the action, by its attorneys, and demurred to the complaint for insufficiency of facts, and also for want of jurisdiction in the court over it and the subject-matter of the action. This demurrer was sustained, and, appellant electing

to stand by his complaint, judgment was accordingly rendered against him for cost; and the decision of the court in sustaining the demurrer is the sole error assigned and relied upon by appellant to secure a reversal.

The facts averred in the complaint disclose that the ditch, out of which the controversy in this action arises, was established by the board of commissioners of Cass county in 1891, under the provisions of an act of the legislature entitled "An Act concerning drainage under specified conditions," approved March 7, 1891. See Acts 1891, p. 455, section 5690, Burns' R. S. 1894 (4317c, Horner's R. S. 1897, and sections following). The county surveyor appears to have been appointed by the board as engineer to superintend the construction of the ditch, as authorized by the statute; and appellant entered into a contract with this official, as such superintendent, whereby he, under a written contract, agreed to construct that part of the drain apportioned to his lands for a price mentioned in the contract, the work to be performed in the manner stipulated in the report of the viewers and to the acceptance of said engineer, and it was further stipulated that the terms of payment should "be as the law provides." The complaint substantially alleges that appellant has completely constructed the part of the improvement allotted to him acccording to the terms of the contract, and that said work has been accepted by said engineer, and that there is due him, and wholly unpaid, the sum of $600, and he has demanded payment thereof from said board, and given it an opportunity to settle with him. All of which, it is alleged, the board has refused and neglected to do. It is further averred that, under the provisions of the statute in controversy, bonds to the amount of $13,000 were

sold in order to obtain money to defray the expenses incident to the construction of the ditch, and that the money so realized was received by the county treasurer and that $1,000 of that amount still remains in the hands of that official subject to and under the control of appellee. Appellant further shows by his complaint that, after the completion of the job awarded to him, he applied to the engineer appointed by appellee for the "necessary voucher or final estimate certificate," in order that he might present the same to the county auditor, and thereby receive from the latter a warrant on the county treasurer for the payment of $600, the amount alleged to be due him under his contract. The engineer, it appears, refused to issue a certificate for the amount demanded, but offered to give one for $106, provided it was accepted by appellant, in full of all demands for the work performed, which offer appellant rejected and thereupon, it is alleged, he appeared before the board of commissioners and presented and disclosed to it all the facts in the case and demanded payment for the $600 due him. The board, it seems, offered to issue to him an order for $106 upon the treasurer of the county, to be in full compensation for the work which he had performed, which amount he refused to accept, and the board thereafter made an order allowing him $104.94, payable only out of the ditch assessments when an amount sufficient thereof was collected. Appellant further alleges in his complaint that he is not seeking to reach any general fund of the county under the control of the board of commissioners, but that said commissioners, as trustee, hold in their hands and have under their control the money, to wit, $1,000, arising out of the sale of said bonds for the payment of the cost of the construction of the improvement, and that he is only

seeking to compel the board to account to him for said money and pay him the amount due for the work performed under his contract.

The theory of appellant's complaint, as well as the contention of his learned and eminent counsel, is that the contract under which the work in controversy was performed was made with the appellee in its corporate entity, and that in such capacity it must be held to be a trustee of the fund created by the sale of the bonds, and, as such trustee, ought to be required to account to him for an amount thereof sufficient, at least, to pay him for the services rendered. The written contract, however, which is set out in the complaint, discloses upon its face that it was entered into by and between appellant and the county surveyor, who, as averred, was appointed by the board to let the contracts for constructing the ditch, and to superintend the construction of the work. The theory and contention of appellant that the contract in question was with the board of commissioners is neither sustained by the facts in the case nor by the provisions of the statute in dispute. Section 8 of the act expressly provides that the board of commissioners shall "direct the surveyor or engineer, who helped to make the apportionment, or some other competent surveyor or engineer," to attend at the time and place of letting the construction of the ditch, and receive bids therefor and make contracts with the lowest responsible bidders and take bonds from the contractors for the performance of the work undertaken by each.

In the case of *Studabaker* v. *Studabaker* (Ind. Sup.), 51 N. E. 933, we were called upon to consider and interpret, to an extent, the identical statute now involved, and we in that case held, in effect, that the question as to the ultimate completion of the ditch, as an entirety, was one for the determination of the

board of commissioners, upon the final report of the engineer appointed, and that this question when presented by this report, as it should be, was one that any landowner affected by the ditch might challenge by an exception to the report and was entitled to a hearing before the board of commissioners upon that question, and others properly arising out of the exceptions filed. The statute on its face, is, to an extent, at least, vague and uncertain, and is open to construction. It does not profess to expressly define all the duties which its makers intended should be imposed on the board of commissioners, neither all of those which it was intended should be discharged by the engineer appointed to superintend the construction of the improvement. By the provisions of the first section, the board of commissioners of any county, on presentation of the required petition upon the part of landowners, at any regular or called session, may cause to be located and constructed any ditch of the length of five miles and over.

The improvement contemplated under the law, when completed, in no sense can be said to belong to the county. The board of commissioners in its corporate entity is not a trustee of the work, and certainly has no proprietary interest therein. The ditch, when completed, may be said properly to belong to the taxing district, or the landowners whose lands have been benefited thereby, and taxed for its construction.

The county commissioners, under the law, simply act as a board before whom the necessary proceedings, leading up to its location and final construction, are instituted and conducted. This statute expressly empowers the board to issue bonds which the county treasurer is authorized to sell, without expense to the county, to the highest and best bidder,

for the purpose of raising money to pay and discharge the cost and expenses growing out of the location and construction of the ditch. This money constitutes a fund in the hands of the treasurer for this purpose, and the payment of these bonds is secured by the money derived from the tax assessed against the lands benefited, which is made a lien thereon, in like manner as other taxes; and such tax, when collected, constitutes a fund which must be applied to the payment of the bonds, principal and interest, and the law forbids that it be applied or converted to any other purpose. See sections 12 and 13 of the act in controversy. As the county has no proprietary interest in the improvement, the law has been careful to guard and protect it against any liability for the construction thereof; and the act in question certainly does not contemplate that the county, through the agency of its board of commissioners, shall act as a trustee of the fund derived from the sale of the bonds, and thereby be subjected, possibly, to the expense and cost of litigation by reason of suits instituted against it, as is done in this case, by an aggrieved contractor.

There can be no warrant for placing a construction upon the law which should result in holding that the board of commissioners is charged with the duty of actually superintending and letting of the contracts, or the construction of the work thereunder, or that it holds the money arising from the sale of the bonds in the hands of the county treasurer in trust, or that this fund is under the direction and control of the board for payment to contractors for services rendered in the construction of the ditch.

It certainly cannot be held, under the facts alleged in the complaint, that appellee, in its corporate capacity, in which it is sued in this action, is in any sense indebted to the appellant, or that it has any

fund in its hands or under its control out of which he can rightfully demand payment for the money alleged to be due him. Therefore he is not in a position to call upon appellee to account to him in this action.

Appellant's contract, as we have heretofore stated, was not with the board of commissioners, but with the engineer appointed by them. It was by and between the appellant and the engineer whom the statute designates as the proper person to let out the construction of the work to the lowest responsible bidders and to enter into a contract with each of such bidders for the performance of the work allotted. The contract set forth in the complaint does not in any manner profess to be one between appellant and the board of commissioners. It is simply an agreement or contract between the appellant and one N. A. Beck, county surveyor, whom, as it appears, was appointed by the board to take charge of and superintend the construction of the ditch. Surely, therefore, the board, under the facts, cannot be said to be in any sense a party to the contract and, manifestly, is not liable to be sued for any breach thereof. The fact that the board of commissioners is authorized to either approve or disapprove the contracts, after they have been entered into by the engineer and the contractors, as provided by section 9 of the statute, certainly does not make the board one of the contracting parties. The decision in Board, etc., v. Newlin, 132 Ind. 27, under the facts, lends no support to the theory advanced by appellant in the case at bar.

We do not concur in the assertion of appellant's counsel that if his client cannot maintain this action, he is without remedy to enforce the payment of his claim for the work which he has performed under his contract. It is true the statute expressly omits to point out in express terms the method by which a

contractor, when his job is completed, may secure an acceptance thereof and payment of the money due him under his contract for the work. The law in this respect is at least open to construction. We concur with the contention of the learned counsel for appellee that the statute, by necessary implication or inference, empowers the engineer appointed by the board and charges him with the duty of furnishing the contractor with the necessary instrument by which he may receive his pay, from the county treasurer out of the fund set apart for the purpose intended. In *Studabaker* v. *Studabaker, supra,* in considering the duty enjoined upon the engineer by the statute in controversy, we said: "There is no doubt but what it is the duty, under the law, of the engineer who is appointed by the board as a superintendent, to see that the work of constructing the ditch is fully completed, as provided by the order of the board and the terms of the contract." The engineer, as provided by section 8, is invested with the duty of superintending the letting of the work and the making of contracts with those who have bid for constructing sections thereof, and also with the further duty, as held in the case last cited, of seeing that the jobs which he has let are fully completed according to the order of the board and the terms of the contract. The principal duty or power of superintending the letting of the work, and making the contracts for its construction, with which he is expressly invested, cannot in reason be said to be terminated when the contracts are made and reported by him to the board; but this principal grant of power should be held to invest him with a general oversight of the work, and the duty to see that it is carried out to completion according to the terms of the contracts. That the legislature, under this statute, intended to impose upon the engi-

neer important duties, finds support in the fact that he is required thereby to give a bond for the faithful performance of his duties, and in the event of his failure or neglect properly to discharge them, he is made liable on his bond in the suit of any person aggrieved. We are of the opinion that the statute must be held impliedly to empower him with the right, or impose upon him the duty, of accepting the jobs, when completed, of the respective contractors whom he may be said to have employed under the contracts which he has made, and also with the duty of adjusting their claims and of furnishing them each with the necessary instrument or means by which they may be enabled to obtain pay for the work performed.

It is a well affirmed principle that where a power is conferred by a statute, everything necessary to carry out the purpose of the power conferred and make it effectual and complete will be implied. *Studabaker* v. *Studabaker, supra;* Sutherland on Statutory Construction, sections 340 and 341. The implication or inference which may arise in the construction of statutes is of something not expressly declared, but arises out of that which is directly or expressly declared in the statute. Anderson's Law Dictionary, 527; Rapalje's Law Dictionary, 629. If the intention of the makers of the statute in question, in regard to the remedy or method to be employed to enable a contractor to secure payment, from the county treasurer upon the completion of his job, can be ascertained, it will control, for it is a fundamental rule that a matter or thing within the intention of the makers of the law is the same in effect as if it were within its express letter. In our search to discover this intention, we may be guided by a well settled canon or construction which permits us to look to kindred statutes or laws upon the same subject, for

aid in the exposition of such intention. It is not, generally speaking, as a rule, expected that a statute which has a place in a general system of laws, will be so perfect as to need no support from the rules and provisions of the system of which it forms a part, and hence, when it is a part of a general system of laws upon the same subject, its construction or interpretation may receive support from the rules and provisions of that system. *Stout* v. *Board, etc.*, 107 Ind. 343, and cases there cited; *City of Evansville* v. *Summers*, 108 Ind. 189, and cases cited; *Board, etc.*, v. *Board, etc.*, 128 Ind. 295. Keeping in view this principle, we may apply for aid in the solution of the question involved to an act of the legislature approved April 21, 1881. Acts 1881, p. 410. See section 5655, Burns' R. S. 1894 (4285, R. S. 1881), and sections following. By this act the board of commissioners of any county is authorized to order the construction of a public drain or ditch. This latter statute, and the one now under consideration are substantially alike in several respects, and each certainly forms a part of the general system of laws providing for and regulating the establishment of ditches. Section 21 of the act of 1881, section 5675, Burns' R. S. 1894 (4305, R. S. 1881), provides that it shall be the duty of the county surveyor, upon being notified by any contractor that his job is completed, to inspect the same, and if he finds that it is completed according to the contract, he shall accept it and give to the contractor a certificate, stating therein that the job, share or allotment is completed according to the specifications, and also stating the amount due to the contractor; and it is further provided in this section that when the assessment of benefits is collected the certificate shall be paid, upon a warrant issued by the auditor.

In the interpretation of the law in controversy, in the light of the principles to which we have referred, we are certainly justified in holding that the legislature intended that a rule similar to the one declared by its predecessors, in the enactment of the drainage act of 1881, so far as applicable, should control or govern, and that a method for the adjustment and payment of the claims of contractors, under the act in question, similar to the one provided by the act of 1881, should be pursued. In other words, it was intended by the makers of the law in dispute that, when a contractor had completed his job according to the terms and provisions of his contract, that he should notify the engineer of that fact, and that this officer should inspect the job, and if he finds that it has been fully completed, as provided in the contract, he should accept it and issue to the contractor a certificate to that effect, stating therein the amount due, and require the contractor to give a receipt for the certificate, to be used by the engineer in his final report or settlement with the board of commissioners. This certificate, on being presented by the contractor to the county auditor, would authorize that officer to draw a warrant upon the proper fund in the hands of the treasurer for the payment thereof. We are constrained to believe that this interpretation is in full harmony with the spirit and intention of the law, and will accomplish what was intended by its makers. This being true, it must follow, as affirmed, that this intent of the legislature in the enactment of this law must be held to be as controlling and effectual as though it were within its express letter.

We do not believe that it was intended by the law makers that the members of the board of commissioners, who, as it may be presumed, are not skilled

in the science of civil engineering, should make a personal inspection of the several jobs to learn if each is completed according to the contract made by the engineer, in order that they may award the contractors pay for the work performed. Neither do we think it is contemplated by this statute that the commissioners should sit as a board for the purpose of allowing the claims of contractors and ordering their payment out of the fund dedicated to that purpose.

The fair inference to be drawn from the provisions of the law involved, when aided by laws of a similar import or kindred character, points to the method or remedy mentioned as the one by which a contractor may obtain pay for services rendered. The engineer appointed by the board may be presumed to be versed in the science of civil engineering, and competent to discover on inspection if the several jobs are completed as required by the contract; and if he finds this to be a fact, the contractor is entitled to his pay, and the engineer should furnish him with the necessary certificate or voucher in order that he may be awarded that which is justly due him, and for a failure to discharge this duty, this official may be compelled to perform it by a writ of mandate, upon a proper showing in a suit instituted by the contractor. *State, ex rel.,* v. *Bever,* 143 Ind. 488.

Appellant seems to have placed a proper construction upon the statute in the first instance, for his complaint reveals the fact that when his job was completed he applied to the engineer for a certificate in order that he might present it to the auditor and thereby secure an order for the money due him. That appellant's right, under the facts, to maintain this action, must be denied, there is no doubt. His controversy, if any, in regard to his right to be paid in full for his work, is certainly with the engineer, and

does not concern the appellee in this appeal. The court did not err in sustaining the demurrer to the complaint, and the judgment is therefore affirmed.