STATE EX REL. CLEMENS *v*. KERN ET AL.

[No. 27,164. Filed April 25, 1939. Rehearing denied June 1, 1939.]

*Frank Seidensticker, Fredrick Bonifield, Earl J. Askren,* and *Otis E. Gulley,* for appellant.

*Edward H. Knight, Reginald H. Sullivan,* and *Edgar M. Blessing,* for appellees.

SHAKE, J.—Appellant as relator brought this action against the members of the board of trustees of the Indianapolis Police Pension Fund to mandate them to place his name on their pension roll and to fix and pay the amount of pension due him. Issues were formed by

an answer in general denial to a single paragraph of complaint. The trial court made a special finding of facts and stated three conclusions of law upon which it rendered judgment for the appellees. The appellant excepted to the first and third conclusions, and the appellees, by cross-error, excepted to the second. These constitute the only errors presented.

The trial court's special finding of facts is too lengthy to be set out in full, and the following summary thereof will suffice: appellant was born April 26, 1889; on April 12, 1922, he was appointed a patrolman on the Indianapolis police force by the board of public safety for a probationary period of 90 days; he took and successfully passed a physical examination made by the police surgeon and also by Dr. McCormick, the regular physician and surgeon of the board of trustees of the police pension fund, and his appointment as a regular member of said force was confirmed on August 2, 1922; he served actively until March 6, 1923, when he was granted an indefinite leave of absence without pay. Thereafter, on August 2, 1923, he voluntarily resigned. Appellant engaged in private business until September 27, 1927, when the chief of police recommended in writing to the board of public safety that he "be reinstated as patrolman . . . effective this date." The records of that board indicate that the recommendation was "taken by consent." On June 26, 1928, on the further recommendation of the police chief, the board of safety confirmed the appointment, the appellant having served a six months' probationary period. On August 3, 1928, while on active duty and in the line of his employment as a patrolman, appellant received personal injuries which totally disabled him until near the end of January, 1929. During the period of his disability he received and accepted his full regular pay as a patrolman, but did not apply for or receive any benefits from the pension fund. On

October 23, 1934, the chief of police made a recommendation in writing to the board of safety that appellant "be retired on police pension; retirement to be effective at once." There was attached to this recommendation the written report of Dr. Dowd, surgeon for the board of safety, which recited that appellant was suffering from pyelitis and chronic myocarditis, rendering him physically unfit for active duty, and recommending his retirement. The recommendation was unanimously approved by the board of safety and appellant was retired on account of physical disability, effective as of August 28, 1934, and his name was removed from the payroll. These proceedings were not reported to the board of trustees of the pension fund. Appellant has not since served on the police department. In the month of October, 1934, for the first time, he made written request on the appellees to be granted a pension for physical disability, claiming that such disability resulted from his injuries of August 3, 1928. Appellees requested Dr. Wagner, its physician and surgeon, to examine appellant and make a report. The physician reported that the diagnosis of appellant's trouble was in doubt, but that it was presumed that his incapacity would continue. Appellant was not examined by any physician representing the police pension fund from the time of the examination made by the police surgeon and Dr. McCormick, in 1922, until examined by Dr. Dowd in 1934. The pension board declined appellant's claim, and tendered to him the sum of $46, which he had paid into its fund during the time he was a member of said police force. The tender was declined and this action followed. The trial court further found that appellant's physical ailments were attributable to and resulted from the injuries received by him on August 3, 1928; that he was totally disabled on account of said injuries on August 28, 1934, when he retired from service on said police force in October of

that year; and that such disability was continuing at the time of the trial.

Upon the facts found by the court, it stated the following conclusions of law:

"1. That the law is with the defendants by reason of said relator, Clemens, being more than thirty-five years of age, to wit: thirty-eight years of age, on September 27, 1927, at which time he was reappointed and, for the second time, as a member of the said police force; which rendered relator ineligible, under the statute thereon, to be placed upon the pension roll, or to receive or be paid by the defendants any pension or any disability arising from any cause, at any time after such reappointment.

"2. That further, the law is with the relator for the reason that under the facts found by the court it was unnecessary for the relator, Clemens to submit to a physical examination by a physician representing the defendants either at the end of five years' consecutive service, or at the time of his final retirement from the police force of the City of Indianapolis.

"3. That the law is with the defendants herein and that said Clemens is not entitled to a judgment herein against the defendants mandating them to place him upon the pension roll, or to fix the amount of and pay to him any pension or other sums, for any disability received by him or arising from any cause, while in active service as a member of said police force; or for any other relief; and accordingly the judgment of the court should be that relator take nothing by his action and that defendants recover from him all their costs in this action." ·

The appeal calls for a construction of certain provisos contained in section 4, chapter 51, Acts of 1925, §48-6404 Burns 1933, §11820 Baldwin's 1934, which are as follows:

(1) "Provided, further, however, That in no event shall a pension be paid to an employee of the police department who at the time of his appointment was over thirty-five (35) years of age, or who failed at that time to pass the medical examination required and provided by the board of trustees

of the police pension fund, and power is hereby given to said board to require and provide for a medical examination for employees of the police department, with power to accept or reject them as members of the pension fund:

(2) "Provided, however, Any such person over the age of thirty-five (35) years, or who has failed to pass the medical examination required, shall be exempt from•paying or contributing any money to the police pension fund:

(3) "Provided, however, That this provision is in no way to apply to the present members of the pension fund, or to those who have resigned, been removed or suspended, and have been reinstated by the board:

(4) "Provided, further, That all employees of the police department at the time any city may have heretofore established or may hereafter establish, a police pension fund, shall, regardless of their age at the time they became members of the department, become members of such fund and be entitled to all the benefits thereof and shall pay the assessments therein provided and be subject to all the other provisions of said act and all amendments thereof."

Appellant contends, with respect to his assigned errors, that the third proviso in that part of §48-6404 (§11820 Baldwin's 1934), *supra,* quoted above, applies to, limits and modifies the first proviso and not the second, so that he is not barred from the pension roll on account of the fact that he was more than 35 years old when reappointed or reinstated to the police force in 1927, since he was under 35 years of age when originally appointed in 1922. In support of his contention the appellant suggests that: (a) pension laws are to be liberally construed to effect their purpose; (b) that a statute ordinarily acts prospectively and not retrospectively; (c) that while a proviso in a statute usually qualifies or restrains the language immediately preceding, yet to give the statute proper effect a proviso may be applied to other parts of the section, or even transposed to another section; (d) that the words, "those who *have resigned,* been removed or

suspended, and *have been reinstated* by the board," evidence a legislative intent to give the word "reinstated" a broader meaning than it ordinarily has, and that appellant is thereby exempted from the age limitation fixed in the first proviso; and (e) that the legislative history discloses that provision for a police pension fund was made in the Cities and Towns Act of 1905 without the age limitations now contained in the provisos to §48-6404 (§11820); that said age limitations were first imposed by amendment in 1913; that as originally introduced, the bill, which became the act of 1913, did not contain the second proviso, but that it was inserted by the legislative committee which had the bill under consideration; that, in its original form, before amendment in the legislative process, the third proviso limited only the first proviso, and that this manifests a legislative intent as to the application of the third proviso that is controlling in the construction of the statute.

On the other hand, it is the contention of appellees that the proper construction of the third proviso requires that it apply to the second, immediately preceding, which would have the effect of rendering appellant ineligible for a pension because he was past 35 years of age at the time of his reappointment. To sustain their position appellees advance the following propositions: (a) that the grammatical construction of the clause, "those who *have resigned,* been removed or suspended, and *have been reinstated* by the board," appearing in the third proviso, clearly indicates that said proviso was intended to operate retrospectively; that if the Legislature had intended it to operate prospectively it would have included the words, "or may hereafter," in said clause; (b) that the controlling purpose and sound public policy of the act in which the third proviso appears demands that it operate retrospectively; (c) that the definition of the word "reinstated" is such that its use in the third proviso can

only be construed as applying to those who have been "removed or suspended," and not to those who have voluntarily "resigned;" that, likewise, the meaning of the word "resigned," as defined by the lexicographers, precludes it from having reference to the word "reinstated," appearing in the same clause, so that "resigned," as used therein, must be regarded as surplusage; (d) that unaccrued pensions are regarded as mere gratuities in which there are no vested rights, so that it is within the legislative purview to cut off the prospective pension claims of those who have not become entitled thereto; that the repeal of that part of the pension law of 1913 in which provisos 1, 2, and 3 originally appeared, and the reenactment thereof in 1925, renders the latter applicable only to situations thereafter arising, so far as the appellant is concerned; and (e) that there is a general rule of statutory construction to the effect that provisos are to be strictly construed so as to include no case or exception not within the strict language and letter thereof.

Both parties to this appeal have submitted exhaustive briefs in support of their respective contentions, and it has been observed that many respectable authorities sustain the various rules of statutory construction upon which they each rely. The construction of statutes is ofttimes a perplexing problem for the courts. The rules evolved to assist in the discharge of this responsibility are innumerable, and not infrequently the very application of these processes tends to further confuse the issue and to complicate rather than simplify the task. When all is said, there is but one basic and fundamental rule of statutory construction, and that is to ascertain the legislative intent or, to put it more accurately perhaps, to determine the true meaning of the language used in the light of the object and policy of the lawmaking authority. At most, the so-called rules of statutory construction are mere guides which have been

evolved through wisdom and experience to aid the courts in determining the legislative intent and, valuable as they are, it is unsafe to apply them abstractly or to accept the conclusions they seem to indicate as absolute in every case. Nor should there be any meticulous analysis of isolated and disconnected sections or parts, but statutes should be considered as a whole and, if need be, the courts may look beyond the particular phraseology under consideration to the entire field of related law, and they may even consider extrinsic facts duly established and shown to be pertinent. *Board of Comm'rs of Fountain Co.* v. *Board of Comm'rs of Warren Co.* (1891), 128 Ind. 295, 27 N. E. 133; *Zoercher* v. *Indiana Associated Telephone Corp.* (1937), 211 Ind. 447, 7 N. E. (2d) 282.

The beneficent purpose of the Police Pension Fund Act is apparent. It is to improve the quality of the public service by holding out to those who adopt it as a career some assurance of a competency upon retirement because of age or disability, in the expectation that more competent persons will be attracted to such positions. The act was no doubt conceived in the same spirit as other legislation which places police officers under merit or civil service regulations and removes their tenure from the vicissitudes incident to the frequent changing of elective officers. This court has accordingly held that the law is entitled to a liberal construction in favor of those intended to be benefited thereby. *State ex rel. Bolden* v. *Johnstone* (1937), 211 Ind. 281, 6 N. E. (2d) 706. Notwithstanding the generous purposes of the police pension system, the Legislature took care to make the burdens placed upon the taxpaying public as light as it deemed practicable. It is accordingly provided that the public aid extended to said system shall be restricted to certain maximum levies; that those who participate in the benefits be required to contribute to the fund; that the trustees receive certain

specified fines and may accept gifts; and that the amount of pension payable in any case shall be strictly limited. The General Assembly evidently believed that if the funds provided were properly administered they would be found sufficient to pay all lawful demands. It is therefore of prime importance that the benefits paid shall be restricted to those persons lawfully entitled thereto, to the end that the funds shall not be dissipated to the injury of those who, in good faith, contributed to their accumulation.

To the same end the Legislature undertook to enumerate in some detail the various circumstances under which benefits would be paid. It is upon this point that the parties disagree and the appeal is predicated, appellant claiming that he is not barred because his tenure was interrupted by his resignation and subsequent reappointment or reinstatement. To give the act an interpretation that would permit appellant to reap its benefits by treating his reappointment as a reinstatement and his second period of service as a continuation of the first, would do violence to its manifest purpose, which is to promote efficiency by inducing continuity of service. If such were permitted there would be nothing to prevent an officer past 35 years of age when the system was established to voluntarily resign and sever himself from the department, and then any number of years afterwards to procure a "reinstatement" with all the attendant benefit rights, irrespective of his age at the time of such reinstatement. The provisions against persons more than 35 years of age (except those who were members of the force when the pension system was adopted) from becoming eligible for benefits were evidently intended to have some relationship to life expectancy and the frequency with which death claims might be anticipated. A construction which would accelerate such claims would do violence to the mortality

risks of the fund and ought to be avoided unless required by the positive and unambiguous provisions of the act.

In *Board of Trustees* v. *State ex rel. Furgason* (1933), 205 Ind. 557, 559, 560, 187 N. E. 330, this court had before it the Firemen's Pension Fund Act (§10924 et seq. Burns 1926.) While the act differs in many respects from the one here being considered, the following excerpts from that opinion are equally applicable to the present case:

"When the relator resigned his position his connection with the fire department was completely severed, and he retained no right to the position or to any of its rights, benefits or emoluments, and no basis remained upon which he could demand reinstatement or re-employment as a matter of right or justice. It may be conceded that, if one is removed from a fire force against his will, or over his protest, or if he is granted a leave of absence, he may retain some right which may be the basis of a reinstatement, which would give him the same status as though he had continued as a member of the force, but, on appointment to the force after a resignation, he must be deemed to enter the force upon the same basis as an employee who had not theretofore any connection with the department. . . .

"The statute was intended to, and does restrict admission to membership in the fund to those who at the time of appointment are not over thirty-five years of age. The relator does not come within this age requirement, and the fact of his prior service adds nothing to his rights. If it were otherwise, one who had served one year on the fire department, having been appointed when he was thirty-five years of age, having passed a medical examination, and who had resigned, might be re-employed after thirty years under guise of reinstatement, and be eligible to membership in the fund, notwithstanding the great injustice thereby worked upon those who had been continuously members of the department and members of the fund. Such a construction would be contrary to the very evident purpose and intention of the provisions of the statute."

If the clause, "those who have resigned, been removed or suspended, and have been reinstated," found in the third proviso, is given a retrospective, rather than a prospective application, the word "resigned" therein must have reference to resignations prior to the enactment of the section in which it appears in 1925. Such an interpretation is justified by the rules of grammatical construction and the statutes of this state require that words and phrases shall be taken in their plain, or ordinary and usual sense. Section 1-201 Burns 1933, section 5 Baldwin's, 1934. It is our opinion, therefore, that the trial court committed no error in its first and third conclusions of law and that appellant is not entitled to recover.

Appellees have assigned cross-error on the trial court's second conclusion of law, and have asked us to consider it if the judgment is affirmed, to the end that future policy may be established with respect to like situations hereafter arising. While the practice of assigning cross-errors is recognized and is to be commended because it permits of a disposition of the whole controversy and avoids a multiplicity of actions, we cannot accede to the appellees' request. In *Feder et al.* v. *Field et al.* (1889), 117 Ind. 386, 388, 20 N. E. 129, Elliott, C. J., said:

> "If, for instance, all that the appellee asks is an affirmance of the judgment, then all that it is necessary to do, in a case where an affirmance can be reached by disposing of the errors assigned by the appellant, is simply to consider and decide the questions presented by the appellant's assignment."

The present case comes within this rule and any expression of this court on the cross-error would be mere dictum. Courts of appeal should exercise care not to discuss questions which are unnecessary to a full and final disposition of the case under consideration. The Declaratory Judgments Act (§3-1101 et seq. Burns 1933, §438

et seq. Baldwin's 1934) affords an appropriate procedure for determining anticipated controversies of the character presented by the cross-error.

Judgment affirmed.

### ON PETITION FOR REHEARING.

SHAKE, J.—Appellant has filed a petition for rehearing in which it is suggested that we have misapprehended the facts. Our attention is called to the following language appearing in the original opinion:

> "If the clause, 'those who have resigned, been removed or suspended, and have been reinstated,' found in the third proviso, is given a retrospective, rather than a prospective application, the word 'resigned' therein must have reference to resignations prior to the enactment of the section in which it appears in 1925."

The part of the opinion quoted might well indicate that we understood that appellant resigned after the act of 1925 became effective. This is not true; he resigned in 1923 and was reinstated in 1927. We so had the facts in mind when the original opinion was written, but it would have been clearer and less likely to mislead if, instead of using the language quoted above, we had said:

> If the clause, "those who have resigned, been removed or suspended, and have been reinstated," found in the third proviso, is given a retrospective, rather than a prospective application, the words "resigned" and "have been reinstated," must have reference to resignations and reinstatements or reappointments which had already occurred and were in full effect at the time of the enactment and effective date of the section in which said proviso appears, in 1925.

We have carefully reconsidered our former opinion and, with the modification indicated above, the petition for rehearing is denied.

Tremain, J., absent.