In the Matter of FACULTY-STUDENT ASSOCIATION OF STATE UNIVERSITY COLLEGE AT OSWEGO, INC., Appellant, *v.* HAROLD SHARKEY et al., Respondents.

In the Matter of STATE UNIVERSITY COLLEGE AT OSWEGO FOUNDATION, INC., Appellant, *v.* HAROLD SHARKEY et al., Respondents.

Fourth Department, October 29, 1970.

*Leyden E. Brown* for appellants.

*Eugene F. Sullivan, Jr.,* for respondents.

*John C. Crary, Jr., David L. Segel* and *Lenore M. Daly* for State University of New York, *amicus curiae.*

BASTOW, J.   These appeals present anew the interpretation and application of the exempt purposes clauses found in section 420 of Real Property Tax Law.   So far as material it is therein provided (subd. 1) that to meet the conditions for tax exemption (1) the real property must be '' owned by a corporation or association organized exclusively for the moral or mental improvement of men and women, or for  *  *  *  charitable, benevolent  *  *  *  educational  *  *  *  purposes  *  *  * or for two or more such purposes '' and (2) the property must be '' used exclusively for carrying out thereupon one or more of such purposes.''   The trial court concluded that neither petitioner in these consolidated proceedings was entitled to tax exemption.

We have recently construed this statutory provision in *Matter of Chautauqua Inst.* v. *Town of Chautauqua* (35 A D 2d 1, mot. for lv. to app. den. 27 N Y 2d 485).   Similarly, the Third Department has considered the statute in *Gospel Volunteers* v. *Village of Speculator* (33 A D 2d 407).   We cull from these decisions that the primary and first test for tax exemption under the statute is that the corporate owner must be '' organized exclusively '' for exempt purposes.   This is accomplished by first examining the stated purposes of the organization.   If thereafter doubt remains the statement of corporate purposes is examined against its actual activities.   (*Matter of Chautauqua Inst., supra,* p. 4.)   The statutory requirement is satisfied if the organization states its purposes (here '' educational '') in the statutory language, or if it lists the necessary means or instrumentalities for accomplishing the controlling objects, or if it lists mere embellishments, or purposes incidental to the principal purpose.   (*Gospel Volunteers, supra,* p. 410.)

The statute mandates two further tests relating to use of realty that must be satisfied before a particular parcel may be exempted from taxation.   First, if the organization holds property for exempt purposes and engages in exempt activities, it must still show that a particular parcel is used for these exempt purposes.   (Real Property Tax Law, § 420, subd. 2.)   This is intended to exclude property used in connection with profit-making activities but permits uses incidental to the exempt purposes.   Thus, where, as here, the evidence shows that the realty

is used for faculty members and others connected with educational institutions it is a use incidental to the exempt purposes (cf. *Matter of St. Luke's Hosp.* v. *Boyland,* 12 N Y 2d 135, 143).

A second test as to use provides that although property is not in actual use for exempt purposes by reason of the absence of suitable buildings or improvements it shall be exempt if the petitioner can show that construction is "in progress or is in good faith contemplated" (Real Property Tax Law, § 420, subd. 3). (Cf. *Matter of Board of Foreign Missions* v. *Board of Assessors,* 244 N. Y. 42, 48–49; *Matter of Syracuse Univ.,* 214 App. Div. 375, 378.)

Applying these several tests to the proof before us we have no difficulty in concluding that appellants' claims for tax exemption for the several parcels of realty should have been granted. We state briefly the facts that lead us to this conclusion.

### Faculty-Student Association of State University College at Oswego, Inc.

The appellant (herein "Faculty-Student") was incorporated as a nonprofit membership corporation in 1951 with stated purposes "to promote and cultivate educational and social relations among the students and faculty of the State University Teachers College at Oswego, New York, a unit of the State University of New York,* and to aid the students and faculty of such college in every way possible in their study, work, living and extracurricular activities." The corporate structure mandates that upon dissolution of the corporation its assets shall be transferred to the State University of New York or to a nonprofit corporation organized and operated for educational, charitable or scientific purposes, with the goal of promoting the purposes of State University College at Oswego and the educational activities of its faculty and students. No member, director, officer or other private person shall benefit from the net earnings of the corporation, except as reasonable compensation for services rendered. The 10 members of the corporation consist of those individuals who hold stated positions within the administration, faculty and student body of the college. The corporation has been exempted from the payment of State and Federal income taxes by administrative decisions of the taxing authorities that it is organized exclusively for educational purposes.

Faculty-Student by formal contract made in 1966 with the State University of New York agreed to provide "auxiliary services and activities in furtherance of its purposes to aid

---

* In 1966 the corporate name was modified to reflect the changed title of the State University colleges.

students and faculty in achieving the over-all educational objectives of the college." Specifically, it agreed to operate food services, a book and supply store and certain listed additional services that might be requested by the chief administrative officer of the college. In fulfillment of the contract Faculty-Student operated the food service, vending machines and bookstore at a 2% profit. Net proceeds were distributed to student recreation, transportation, scholarships and various student activities and educational projects. In addition it operated a linen service, equipment rentals, an ice rink, ski tow, stables and a conference program. The contract establishes that Faculty-Student is subject to close financial control by the State University.

The subject premises, owned by Faculty-Student, is a small portion of a larger tract referred to as the Sarat property. It consists of a parcel of land roughly 600 feet in width along highway Route 104 and 300 feet in depth. A dwelling is located thereon. The parcel adjoins the campus of the college. In 1968 it was assessed for $2,500. The Sarat property, originally encompassing 22 acres, was purchased by Faculty-Student in December, 1960 in anticipation of expansion of the college to the west. Subsequently, the State purchased a large portion of the land. Faculty-Student retains the remainder with the expectation that the State will purchase it for access to the campus. It refurbished an existing house on that remaining portion and rents it to new faculty members on a temporary basis while they arrange for suitable permanent housing.

### State University College at Oswego Foundation, Inc.

This appellant (herein "Foundation") was incorporated in 1947 as a nonprofit membership corporation with stated purposes (a) "to promote and cultivate social intercourse and fellowship among the students and alumni of the college and to maintain reading and assembly rooms and a meeting place for such students and alumni" and (b) "To aid young men and women who are students at the (college) by assisting them in every possible way in their work, student living and extracurricular activities." The governing body consists of the president of the college and seven members elected by the board of directors as a self-perpetuating body. It is exempt from Federal income tax under the provisions of section 501 (subd. [c], par. [7]) of the 1954 Internal Revenue Code.

The principal activities of Foundation are the operation of off-campus dormitories and the purchase of properties for later resale to the State for development of the college campus. Its

income derives from room rentals and from the sale of its properties. The college administration is legally required to fill State dormitories first; those students remaining thereafter are assigned to housing operated by Foundation.

The corporation owns three parcels of real estate involved in this proceeding. The so-called Dowie property comprises 15 acres along Lake Ontario, located two miles from the college campus and one mile from the biological station of the college. It has been assessed for $1,500. Foundation purchased the property in 1957 as a potential campsite for tents and trailers used by summer students and to replace property formerly used for that purpose until purchased by the State for dormitory purposes. The property has also been used for summer recreation — swimming and picnics along the beach. A house located on the property has been rented to faculty members on a temporary basis.

The so-called Casey property was acquired by Foundation in 1963 for development into faculty housing. It consists of some 23 acres, assessed at $2,400. Plans were formulated for construction of a complex of garden apartments which have been delayed by the departure of the former president of the college. A house located on the property has been altered for use as a residence for a faculty member on a short-term basis.

The remaining realty — so-called Rose property — was purchased in 1963 by Foundation. It is a small parcel of land roughly 300 feet along Cemetery Road and 200 feet in depth with a dwelling thereon. It is assessed for $2,300. It adjoins the biological station of the college. Foundation has refurbished the dwelling and rents it to faculty members as a residence. It is expected that the State will eventually require this realty because it affords the only direct access from Cemetery Road to the biological station.

The proof is that none of these properties were purchased for temporary housing but were acquired for recreation, housing and educational purposes incident to the college and to permit its future expansion.

We conclude, as heretofore stated, that appellants were "organized exclusively for educational purposes" within the meaning of section 420 of Real Property Tax Law. This court has written that "Statutes exempting property from taxation are to be strictly construed against those claiming the exemption. [Citing cases.] But they should not receive an interpretation so narrow and literal as to defeat or nullify the intention of the Legislature to encourage, foster and protect corporate institutions of a religious, literary or educational character.

[Citing cases.] '' (*Matter of Syracuse Univ.*, 214 App. Div. 375, 377, *supra.*) And in *Matter of St. Luke's Hosp.* v. *Boyland* (12 N Y 2d 135, 143, *supra*) it was said: '' The test of any tax exemption is whether apartments in them occupied by hospital personnel and their immediate families are devoted to a use which ' is reasonably incident ' to the major purpose of the hospital [citing case]. * * * The same has been held in tax exemption cases regarding housing for faculty members and others connected with colleges and universities [citing cases].''

The proof establishes that Faculty-Student operates the food service, the book store and various auxiliary educational and recreational functions of the sort usually performed by a residential educational institution. Foundation operates student dormitories and acquires properties for the expansion and support of the educational facilities of the college. These functions are necessary to the college community and so further the goal of education.

The record further establishes that the Sarat and Rose dwellings on small parcels of land were used for faculty residences. The uses of the dwellings and contiguous land of the Casey and Dowie properties are exempt uses under the same principle. While these properties contain substantially more acreage than the other two, there is undisputed proof that use was made of the land for educational purposes and that construction of improvements thereon was '' in progress or is in good faith contemplated '' (Real Property Tax Law, § 420, subd. 3) which has been interrupted by changes in the presidency of the college.

The orders appealed from should be reversed and the subject properties declared exempt from real property taxation.

DEL VECCHIO, J. P., MARSH, MOULE and HENRY, JJ., concur.

Orders unanimously reversed on the law and facts with costs and judgment entered declaring subject properties exempt from real property taxation.