In the Matter of the JULIA L. BUTTERFIELD MEMORIAL HOSPITAL ASSOCIATION, Respondent, v TOWN OF PHILIPSTOWN et al., Appellants.

Second Department, June 9, 1975

*Charles E. Doyle, Jr., Town Attorney (Bleakley, Platt, Schmidt & Fritz, Special Counsel [Maurice Curran, Charles E. Doyle, Jr., and Hugh D. Fyfe of counsel]), for appellants.*

*Benjamin B. Hersh for respondent.*

MUNDER, J. The property in question is improved with a Medical Arts Building which was built by the petitioner and is contiguous to the hospital which petitioner also owns and operates. The petitioner is a private, nonprofit association established to operate the hospital which was the testamentary gift of Julia L. Butterfield. Her will was admitted to

probate in Putnam County in March, 1915. The property in question is located in the Village of Cold Spring. It is clear from the record that the petitioner's motivation in erecting the Medical Arts Building was to attract and hold doctors to service the small community. That purpose has been achieved. The hospital now has a number of medical specialists on its staff sufficient to provide full service to its patients, including the critical area of emergency care and treatment.

As part of its inducement to the doctors, petitioner offered (1) a guaranteed income until the doctors' practices were built up, e.g., several received guarantees of $30,000 per year against which they deducted fees received, (2) rent-free occupancy of office suites in the building for a period of time and (3) payment for other services, such as cleaning, heat, electricity and air conditioning of the suites.

In addition to the doctors' suites, the building also contains facilities more directly related to the hospital, e.g., 14 hospital beds, an educational facility for coronary and intensive care seminars and a mental health clinic. The building, insofar as its tax-exempt status is concerned, is a hybrid. Portions of it are used for hospital or hospital-related purposes. However, it also contains suites used as offices by doctors in which they conduct their private practices of medicine, from which they derive pecuniary benefit and for which they pay some rent to the hospital. In our view, as to that portion, the doctors are not performing their services in furtherance of hospital functions and, to that extent the petitioner is not entitled to an exemption from taxation.

As noted recently by the Fourth Department, in a somewhat similar case, *Matter of Genesee Hosp. v Wagner* (47 AD2d 37), the trend of the statutory exemption law has been to restrict rather than expand exemptions. In *Genesee Hosp.,* the Fourth Department, *inter alia,* rejected the "all or nothing" point of view and held that the portion of a doctor's office building consisting of office space leased to doctors with staff privileges at the hospital, and used exclusively for their private practice of medicine, was not exempt space and was taxable. Similar results were reached in *Little Falls Hosp. v Board of Assessors of City of Little Falls* (75 Misc 2d 731) and *Matter of Community-General Hosp. of Greater Syracuse v Town of Onondaga* (80 Misc 2d 96). We reach that same conclusion in the instant case.

Accordingly, the judgment should be reversed, without costs,

and the proceeding remanded to Special Term for the taking of further proof and the making of proper findings as to the extent of the area of the Medical Arts Building subject to taxation, and to fix the assessments therefor for the years in question.

RABIN, Acting P. J. (dissenting). I dissent and vote to affirm the trial court's determination that the property in question is entirely tax exempt. The statute provides that real property owned by a hospital is exempt from taxation if the property is used "exclusively" for carrying out "hospital * * * purposes" (Real Property Tax Law, § 421). We must therefore determine whether the property in question is being used for hospital purposes. The recognized test is whether the use to which the property is put " 'is reasonably incident' to the major purpose of the hospital" *(Matter of St. Luke's Hosp. v Boyland,* 12 NY2d 135, 143; *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350, 358). The case law well establishes that, under this test, the use need not be limited to the actual operation of caring for the sick in order for it to be classified as a use exclusively for a hospital purpose. For example, in *Matter of Ellis Hosp. v Fredette* (27 AD2d 390), a parking lot was held reasonably incident to a hospital purpose. Similarly, administrative offices, classrooms, parking areas, dormitories, a hospital infirmary, a bookstore, a university farm and a chancellor's residence have all been found to be reasonably incident to the educational purpose of an exempt organization *(Matter of Syracuse Univ.,* 59 Misc 2d 684; *Matter of Syracuse Univ.,* 214 App Div 375; see, also, e.g., *Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey,* 35 AD2d 161, affd 29 NY2d 621 [food service, bookstore, vending machines, linen services, ice rink, ski tow, and equipment rentals—all tax exempt]; *Greater New York Corp. of Seventh-Day Adventists v Town of Dover,* 29 AD2d 861, app dsmd 23 NY2d 682, and *Gospel Volunteers v Village of Speculator,* 33 AD2d 407, 411, affd 29 NY2d 622 [golf course, former country club hotel, tennis courts and miniature golf course—tax exempt as reasonably incident to religious purpose of retreat]).

In *Matter of St. Luke's Hosp. v Boyland* (12 NY2d 135, *supra),* St. Luke's Hospital, located in Manhattan, claimed tax exemption for 10 apartment buildings it owned across the street from the hospital. The apartments were occupied partially by hospital personnel and partially by persons with no connection with the hospital. St. Luke's sought a tax exemp-

tion on the ground that the apartments were rented to hospital personnel in order "to place it at a competitive advantage in recruiting and retaining internes, residents and nurses who are in short supply" *(id.,* p 141). The court granted a partial tax exemption, holding that St. Luke's was entitled to an exemption for those apartments occupied by hospital personnel since "supplying living accommodations for hospital personnel and their immediate families is a hospital purpose" *(id.,* p 141).

With regard to the tax status of petitioner's Medical Arts Building, the lesson of *St. Luke's* is that an identical use (e.g., apartment rental) may be either a hospital purpose or not, depending upon the connection between the use and the hospital purposes. In order to determine the applicability of the tax exemption in this case, we cannot rely solely upon the nature of the use of the Medical Arts Building; we must focus instead upon the connection between the use to which the building is put and the hospital purposes.

It is generally conceded that the motivation of the hospital in erecting the Medical Arts Building was to attract doctors to the small community in which the hospital is located, in order to assure adequate medical care for its patients. Before the erection of that building, Butterfield, a 51-bed hospital, had no resident or house physician, and doctors were not always immediately available for medical emergencies. It had no teaching program for its nurses and other personnel. Thus, the hospital was severely handicapped in its efforts to properly care for its patients, if it was not in fact prevented from furnishing that care.

As a result of the erection of the new building the doctors so sorely needed have been brought to the hospital. As noted by the majority, "That purpose [to attract and hold doctors] has been achieved. The hospital now has a number of medical specialists on its staff sufficient to provide full service to its patients, including the critical area of emergency care and treatment." The doctors using the Medical Arts Building also have teaching programs for nurses and other hospital personnel.

Furthermore, in order for a doctor to be allowed to rent space in the Medical Arts Building, he must agree to maintain certain connections with the hospital. The primary qualification for renting office space is that the physician must agree to become a member of Butterfield's medical or dental staff.

When there is a medical emergency at the hospital, a "Code 99" (emergency) is broadcast over the loudspeaker and every doctor, regardless of specialty, including those doctors who rent space in the Medical Arts Building, must respond.

I find that these circumstances establish sufficient connection between the primary use of the Medical Arts Building, office space in which doctors conduct their private practices, and the purposes of Butterfield Hospital, to care for the sick in a small community and to bring in doctors to do so. On the present facts, the connection between the use of the premises in question and the hospital in question is established at least as well as the parking lot to the hospital in *Matter of Ellis Hosp. v Fredette* (27 AD2d 390, *supra),* and the apartment rentals to hospital personnel in *Matter of St. Luke's Hosp. v Boyland* (12 NY2d 135, *supra).* Were the suites in the Medical Arts Building rented to doctors with no connection to the hospital, or were the connections to the hospital significantly less, the result would be different (cf. apartments rented to nonhospital personnel in *Matter of St. Luke's Hosp. v Boyland, supra).*

The fact that the doctors as well as the hospital derive a benefit from the use of the Medical Arts Building should not be controlling in determining whether that building is used for hospital purposes under the statute. Certainly, the doctors residing in the apartments owned by St. Luke's Hospital also derived a personal benefit from the use, which was nevertheless found by the Court of Appeals to be a use for a hospital purpose.

Nor does the fact that the doctors use the facilities for their personal profit defeat the tax-exempt status. In a case with facts somewhat similar to those here, *Matter of Genesee Hosp. v. Wagner* (47 AD2d 37), the Fourth Department held that a three-story doctor's office building, housing private offices for about 40 attending staff physicians, was not used for hospital purposes so as to be tax exempt. In so deciding, the court relied heavily on the fact that doctors utilizing the office space for their private practices were engaged in a profit making venture: "The clear distinction between the instant case *[Genesee]* and other cases dealing with commercial, corporate activity is that here we have third parties receiving pecuniary profit from their own private practice of medicine which is integrally related to the operation of the real property" *(id.,* p 45). However, profit by third parties has not previously oper-

ated as a controlling factor in extinguishing the tax exemption for benevolent corporations. In *Matter of Pace Coll. v Boyland* (4 NY2d 528), the Court of Appeals held that the cafeteria of Pace College was used exclusively for educational purposes, and that it was therefore tax exempt, despite the fact that a third party, an outside food chain, operated the cafeteria, paid no rent or remuneration to Pace, and retained the profit (or sustained the loss) resulting from the operations. The court found that there was sufficient connection to the educational purpose of Pace since the use of the cafeteria was restricted to students, faculty and other staff of the college. Having established sufficient connection to its educational purpose, Pace did not lose the exemption merely because the food chain was operating the cafeteria for a profit, just as it might operate any of its cafeterias. Similarly, in *People ex rel. Doctors Hosp. v Sexton* (267 App Div 736, affd 295 NY 553), it appears that the hospital property retained its complete tax-exempt status despite the fact that physicians were using the facilities and received "reasonable compensation for services rendered" (267 App Div, at p 743).

In short, the case law offers ample precedent for a finding that the petitioner's Medical Arts Building is used for hospital purposes, notwithstanding that third parties receive a pecuniary advantage from the arrangement. The litmus test in each case is the relationship between the use made of the property and the purpose of the particular institution involved. This relationship need not be proven in the same way in each case, and it is the facts of the particular case, and the totality of the connections, which control. In the present case, the connection to the hospital purpose is sufficiently shown by the benefit accruing to the petitioner. The primary use of the Medical Arts Building is in furtherance of the hospital's function to attract doctors necessary to furnish the medical care needed by its patients, care which could not be obtained by any other means. Although relevant in the total picture, the fact that the doctors using the building earn profits and that their patients are not hospital patients (see *Little Falls Hosp. v Board of Assessors of City of Little Falls,* 75 Misc 2d 731; *Matter of Community-General Hosp. of Greater Syracuse v Town of Onondaga,* 80 Misc 2d 96) does not destroy the connection.

Finally, both the decision in *Matter of Genesee Hosp. v Wagner* (47 AD2d 37, *supra)* and the majority opinion herein

refer to a "trend of the statutory exemption law * * * to restrict rather than expand exemptions". The apparent authority for this proposition is *Matter of Association of Bar of City of NY v Lewisohn* (34 NY2d 143). While there may be such a trend, it should be noted that the organizations involved in the *Association of the Bar* case were a bar association and a science club. The denial of tax exemption to them was based upon the Legislature's amendment of the tax laws so as to give local communities the option of exempting or taxing such organizations (Real Property Tax Law, § 420 [now § 421], as amd by L 1971, ch 414). This amendment specifically applies to those corporations or associations organized for bar association and scientific purposes; it does not apply to those organized exclusively for hospital purposes. The Legislature had the opportunity to curtail the tax exemption accorded hospitals, but did not do so. It is likely that the Legislature's categorization of hospitals separate from bar associations and scientific organizations reflects a judgment that, while all these organizations provide a public benefit, a hospital's effect upon the population at large is significantly greater than that of the other beneficial organizations. As the legislative action suggests, there is greater force behind the argument that public policy supports real property tax exemptions for hospitals. Consequently, any restrictive trend may not be applicable in this area.

HOPKINS, BRENNAN and SHAPIRO, JJ., concur with MUNDER, J.; RABIN, Acting P. J., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Putnam County, dated May 13, 1974, reversed, on the law, without costs, and proceeding remanded to Special Term for the taking of further proof and the making of proper findings as to the extent of the area of the Medical Arts Building at issue which is subject to taxation, and to fix the assessments therefor for the years in question.