Francis M. DeMAYO and Marlen E. DeMayo, Appellants (Defendants Below),

v.

STATE of Indiana on the relation of the DEPARTMENT OF NATURAL RESOURCES, Appellee (Plaintiff Below).

No. 3–1277A321.

Court of Appeals of Indiana, Third District.

Sept. 27, 1979.

---

Richard C. Ver Wiebe, Ver Wiebe, Snow, Miller & Gray, Fort Wayne, for appellants.

Theodore L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendants-appellants Francis and Marlen DeMayo appeal from a prohibitive and mandatory injunction granted to the plaintiff-appellee State of Indiana, Department of Natural Resources. The injunction ordered DeMayos to remove five feet of their patio-seawall construction which was found to encroach upon the legal shoreline of Lake Gage in Steuben County and to restrain from building any construction altering the shoreline until their prior compliance with all applicable statutes.

Three issues are argued upon appeal: whether the State sustained its burden of proving an encroachment; whether injunctive relief was a proper remedy; and whether the court erred in finding that appellants' property does not abut Lake Gage.

The facts relevant to these issues and most favorable to the judgment below are as follows: Appellants purchased property described as Lot No. 6 in Hickory Bluff at Lake Gage on September 13, 1974. They subsequently decided to improve the seawall existing on the property, which had been constructed by a former owner, (Dan Radu), pursuant to a valid permit obtained from the Department of Natural Resources. Appellants intended to construct a seawall and patio of concrete and hired Rex Whitcomb to perform the work. As Whitcomb prepared to pour the platform, Ronald Spade, local conservation officer, asked to see a permit authorizing the work whereupon Whitcomb referred to the permit previously issued to Radu. Work on the project was then halted and Spade informed Mr. DeMayo that it was necessary for him to obtain a permit from the State Department of Natural Resources. DeMayo applied to the department for a permit. As Lake Inspector Glen Lange conducted an investigation of the matter, he determined that the uncompleted structure encroached the water of Lake Gage approximately six feet. Suit was then brought by the Attorney General's Office, pursuant to the authority granted in IC 1971, Title 13, Article 2, Chapters 11 and 14 providing for the preservation of lakes.

Appellants' first contention is that there is insufficient evidence to prove encroachment upon the legal shoreline of Lake Gage, making the trial court's finding contrary to law.

In reviewing a case on appeal this Court considers only that evidence which supports the trial court's conclusions of fact and law, together with all reasonable infer-

ences which may be drawn therefrom. If such evidence is sufficient to support the judgment below it will be affirmed. *Knightstown Lake Property v. Big Blue River* (1978), Ind.App., 383 N.E.2d 361. In addition, upon appeal this Court may not determine credibility of witnesses or otherwise re-evaluate evidence. *Clark Advertising Agcy. v. Avco Broadcasting* (1978), Ind. App., 383 N.E.2d 353.

At trial three expert witnesses testified for the State. Robert Stewart from the Water Resources Division of the U.S. Geological Survey Department explained that all lakes in Indiana, including Lake Gage, have a water gauge which reflects the elevation of the lake at any particular time in relation to sea level, from which daily readings are recorded. Based on the data collected about the water level of Lake Gage, the legal shoreline of the lake can be determined at any particular time. Stewart explained that if the gauge level of the lake was high on a particular day as compared with the legally established level, special calculations for the difference would be needed in order to find the legal shoreline. The procedure as described by Stewart is to take an engineer's ruler, walk out into the water and measure down until it registered the difference of the water above the legal water level.

Robert Glazier, head of Lakes and Streams section within the Division of Water for the Department of Natural Resources, testified that he and Glen Lange, Lake Inspector for the Department, investigated the site of the seawall pursuant to the DeMayos' application for a permit. On October 2, 1975, they measured the shoreline of the lake and also measured the patio seawall in relation to the road. At that time the two men made the type of measurements earlier described by Stewart to determine the shoreline of the lake prior to and after construction of the platform. As a result of these measurements a draftsman, under Glazier's supervision, drew up a diagram depicting the data. This diagram was generally admitted into evidence without objection as Plaintiff's Exhibit No. 7.

Glazier further testified that, based upon the calculations made, the department concluded that the seawall did encroach upon the lake approximately six feet. He also explained that, even if the DeMayo structure had not encroached upon the lake a prior permit should have been obtained, which is necessary whenever the shoreline of a lake will be in any way altered.

Glen Lange then presented testimony concerning his investigation of the DeMayo application and Plaintiff's Exhibit No. 7. Lange testified that:

"[B]efore taking any pictures or processing any applications, it's a normal process to read the lake gauge and determine what the lake level is at that particular date and that particular time, and then compare that with the legal level, and I did that."

Lange went on to detail his several visits to the seawall site and the method which he used to determine the legal shoreline of the lake as compared to the lake level at the particular time of measurement. On the diagram marked as Plaintiff's Exhibit No. 7 Lange identified the seawall structure and in particular pointed out the area which extended past the legal shoreline by approximately six feet.

From all of this testimony including the exhibit admitted for general purposes and on which the legal shoreline is indicated, the trial court could determine that the State met its burden of proving that the DeMayo structure did encroach upon the legally established shoreline of Lake Gage. The evidence shows that, contrary to appellants' argument, the Department of Natural Resources did make adjustments necessary in measuring to determine the location of the legally established shoreline of the lake.

Appellants' next argument is that the issuance of a mandatory injunction was contrary to law. They allege that removing the existing structure is costly, that the State did not suffer substantial injury, and that therefore, upon proving entitlement to relief monetary damages should have been awarded. As pointed out by the State, dam-

ages are not an alternative provided for within IC 1971, 13–2–11–5 (Burns Code Ed.), which authorizes injunctive relief as the sole means of enforcing such preservation suits as follows:

> "The Indiana department of conservation [natural resources] is hereby authorized and empowered to bring in any court of proper jurisdiction, *actions by way of injunction, either prohibitive or mandatory,* or both, by separate paragraphs in the same complaint against any person violating any of the provisions of this act [13–2–11–1—13–2–11–6]." (Emphasis added.)

Money damages would not provide adequate relief from illegal changes in the shoreline. Provisions of a statute prescribing a statutory remedy must be strictly pursued. 1 C.J.S. Actions § 5, p. 973. Further, the Department of Natural Resources was concerned about the DeMayo structure because it was the first permanent obstruction into the lake and it diminished the area of the lake accessible to the public. As stated in *Rees v. Panhandle Eastern Pipe Line Co.* (1978), Ind.App., 377 N.E.2d 640, at 649, citing 11 Wright and Miller, Federal Practice and Procedure § 2948, p. 461 (1973), " 'when the acts sought to be enjoined have been declared unlawful or clearly are against the public interest, plaintiff need show neither irreparable injury nor a balance of hardship in his favor.' "

The DeMayos' argue that they obtained a copy of the Radu permit and built the structure in good faith, believing that it authorized their improvements. However, the one-page permit plainly states that it was not assignable or transferable without the written consent of the department and that it expired within one year. If DeMayos had followed the statutory scheme and applied for the required permit prior to construction they would not now be faced with the cost of removing part of the structure. Their failure to do so does not render the grant of injunctive relief improper.

Finally, appellants take issue with the court's Finding No. 8, that lot number six owned by the DeMayos' does not abut Lake Gage. This was not an issue in the case and any error in the finding is harmless and not grounds for reversal.

With no reversible error having been demonstrated the judgment below is affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.