Bert CARSON, Thomas Hobbs, William Paddack, and John D. Hardin, Jr., As Members of the Board of Trustees of the Hendricks County Hospital and Hendricks County Hospital Foundation, Inc., Defendants-Appellants,

v.

Frank ROSS, James Malayer, Charles Whitaker, Keith Ernst, and John Long, as Members of the Board of Trustees of the Putnam County Hospital, Plaintiffs-Appellees.

No. 11A01–8612–CV–324.

Court of Appeals of Indiana,
First District.

June 29, 1987.

Rehearing Denied Aug. 24, 1987.

954(1)

Russell M. Webb, Jr., Hinkle Keck Webb & Pierce, Danville, for defendants-appellants.

J.D. Calbert, Greencastle, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Defendants, Bert Carson, Thomas Hobbs, William Paddack, and John D. Hardin, Jr., as members of the Board of Trustees of the Hendricks County Hospital and Hendricks County Hospital Foundation, Inc., appeal the preliminary injunction and contempt order entered by the Clay Circuit Court. We reverse in part and affirm in part.

## FACTS

The individual plaintiffs are members of the Board of Trustees of Putnam County Hospital (PCH). The defendants are the Board of Directors for Hendricks County Hospital (HCH) and comprise four of the seven members of the Board of Directors for Hendricks County Hospital Foundation (HCH Foundation). HCH is a public county hospital operated in Hendricks County. HCH incorporated HCH Foundation under the laws of the State of Indiana and pursuant to Indiana Code section 16–12.1–3–1 to promote and benefit HCH. HCH Foundation is funded primarily by HCH pursuant to Ind.Code § 16–12.1–3–12. HCH Foundation has no independent facilities, officers or employees. Accordingly, HCH Foundation functions through use of HCH facilities, offices, and employees.

On September 16, 1985, HCH Foundation purchased approximately three acres of real estate in Putnam County and took title by warranty deed. HCH Foundation's stated purpose in acquiring the land was to construct and sell a medical office building. Before purchasing the land, HCH Foundation had negotiated to sell the medical office building to four physicians. The medical office building was to be sold for cost plus interest, calculated at one percent (1%) over prime. Although the buying physicians were on staff at HCH, no agreement was made that would require them to maintain contact or refer patients to HCH for hospital services.

An advertisement was mistakenly placed in the Banner-Graphic on January 20, 1986, which indicated that HCH would take bids on a building project in Bainbridge. A construction document was issued on March 26, 1986, and bore the project name, "Hendricks County Hospital Bainbridge Family Health Center." Construction commenced after the issuance of the building permit.

On June 25, 1986, PCH filed a complaint against defendants and requested an injunction and restraining order. On August 6, 1986 before a change of venue was perfected, plaintiffs sought, and Judge Vaughn granted, an emergency injunction and temporary restraining order without notice. A hearing on the order was set for and held on August 12, 1986. Attorneys for both sides were present at the hearing, but the validity of the restraining order was not argued at that time. The temporary restraining order was continued at that time by consent of both attorneys and by written order of Judge Vaughn, "until further order of selected special judge or judge of the county to which this cause is venued."

On August 19, 1986, venue was perfected in the Clay Circuit Court. On that same day, on advice of defendant's counsel, construction resumed. Plaintiffs filed an affidavit for Order to Show Cause for Contempt. Plaintiffs' contempt motion and request for preliminary injunction was heard by the Clay Circuit Court on September 4, 1986. On November 6, 1986, Judge Yelton issued findings of fact, conclusions of law, and judgment in favor of PCH. The judge issued a preliminary injunction against defendants for violation of Ind.Code § 16–12.1–3–2 and found defendants in contempt of

the temporary restraining order issued by Judge Vaughn. Judge Yelton also fined defendants five hundred dollars ($500) each and ordered them to pay that portion of PCH's attorney's fees attributable to the enforcement of the restraining order contempt citation.

HCH and HCH Foundation challenge the preliminary injunction and contempt order by interlocutory appeal.

## ISSUES

The issues presented by HCH and HCH Foundation are restated as follows:

1. Whether the trial court abused its discretion in issuing a preliminary injunction based on Ind.Code § 16–12.1–3–2.

2. Whether the trial court's order finding the defendants in contempt of court was proper.

## DISCUSSION AND DECISION

*Issue One*

■ The grant or denial of a preliminary injunction is in the sound discretion of the trial judge. *Mid-America Marketing, Inc. v. Falender Development Corp.* (1980), Ind.App., 406 N.E.2d 372. Therefore, we will not reverse unless it is shown that the trial court abused its discretion or acted contrary to law. *Lambert v. State Department of Highways* (1984), Ind.App., 468 N.E.2d 1384, 1389, *trans. denied; Steenhoven v. College Life Insurance Co.* (1984), Ind.App., 458 N.E.2d 661, 664. An injunction, however, is an extraordinary remedy and should be used sparingly. *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 682; *F.W. Means and Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, 260, *trans. denied.* The court should issue a preliminary injunction only when the law and facts are clearly in the moving party's favor. *Steenhoven,* at 667; *Wells,* at 682.

■ In reviewing for abuse of discretion in the grant or denial of a preliminary injunction, this court must review the trial court's findings of fact and conclusions of law. *Steenhoven,* at 664. The court is generally guided by four factors in determining the propriety of a preliminary injunction.[1] However, when the acts sought to be enjoined are declared unlawful by the legislature the plaintiff does not have to show either irreparable injury or a balance of hardship in his favor. *State ex rel. Department of Natural Resources v. Mason* (1981), Ind.App., 416 N.E.2d 1312, 1316, *trans. denied; DeMayo v. State ex rel. Department of Natural Resources* (1979), 182 Ind.App. 241, 394 N.E.2d 258, 261. If the trial court's findings of fact are clearly erroneous or the conclusions contrary to law, then the trial court's grant of a preliminary injunction will be reversed as an abuse of discretion. *Steenhoven,* at 665; *Wells,* at 684. In the present case, the trial court's findings of fact and conclusions thereon were contrary to law and an abuse of discretion. Accordingly, we reverse.

■ In the present case, PCH requested a preliminary injunction based upon the argument that HCH Foundation was in violation of Ind.Code § 16–12.1–3–2 which reads:

"The board may purchase, construct, remodel, repair, enlarge, or acquire in any lawful manner a building or buildings, within or outside the county, for hospital purposes as defined in this article. However, if the building is located outside the county, the board must receive the approval of:

(1) the commissioners of the county in which the hospital is located; and

(2) the commissioners of the county in which the building is located."

Application of this section, however, requires that the purchase, acquisition or construction of a building take place for "hospital purposes," which is defined in Ind.Code § 16–12.1–1–2(h) as follows:

" 'Hospital purposes' shall mean the providing to the general public of in-patient or out-patient diagnostic and treatment facilities and services generally recognized as hospital services, under the direction and supervision of the patient's attending physician and may include, where provision is made therefor, in the discretion of the board, extended care

1. "The discretion to grant or deny preliminary injunctive relief is measured by several factors, including (1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending resolution of the substantive action if the injunction does not issue, (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a *prima facie* case (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction would occasion upon the defendant, and (4) whether by the grant of a preliminary injunction the public interest would be disserved." *Steenhoven,* at 664.

facilities, and other related health care facilities and services."

Accordingly, if the medical office building was not constructed for hospital purposes as defined by statute, then Ind.Code § 16–12.1–3–2 is inapplicable and may not be used to support the preliminary injunction.

In order for the construction to occur for hospital purposes, HCH or HCH Foundation as an alter ego must provide or intend to provide treatment facilities or services to the general public that are generally recognized as hospital services. Plaintiffs have failed to present any evidence that HCH or HCH Foundation would provide treatment facilities and services generally recognized as hospital services. The undisputed evidence shows, and the trial court found, that HCH Foundation intended to resell the medical office building to four physicians as soon as construction was completed. Record at 106. HCH Foundation's actions were geared toward financial investment and not the providing of hospital services. The medical office building clearly was not being constructed for hospital purposes as defined by statute.

PCH argues that HCH Foundation's actions inherently must be for hospital purposes, because HCH Foundation was established for the exclusive benefit of HCH. However, the mere fact that HCH Foundation's actions ultimately would benefit HCH financially and possibly indirectly through referred hospital patients does not mean that HCH Foundation's actions were for hospital purposes. In defining "hospital purposes" the statute makes no mention of "benefit". Rather, "hospital purposes" is defined exclusively with respect to the ultimate goal of a hospital—provision of treatment facilities or services generally recognized as hospital services. If the legislature meant to include HCH Foundation's actions within the definition of hospital purposes they would have defined it from the standpoint of activities that will financially benefit the hospital. However, the legislature did not define hospital purpose in this manner. Since HCH Foundation was motivated by return on financial investment and not provision of hospital services, Ind.Code § 16–12.1–3–2 is inapplicable to the present activities of HCH Foundation.[2]

Our interpretation of "hospital purposes" is in accord with other jurisdictions which have indirectly interpreted hospital purposes with regard to individuals seeking tax exempt status. *Greater Anchorage Area Borough v. Sisters of Charity* (1976), Alaska, 553 P.2d 467; *City of Long Branch v. Monmouth Medical Center* (1976), 138 N.J.Super. 524, 351 A.2d 756; *Julia L. Butterfield Memorial Hospital Ass'n v. Town of Philipstown* (1975), 48 A.D.2d 289, 368 N.Y.S.2d 852; *Genesee Hospital v. Wagner* (1975), 47 A.D.2d 37, 364 N.Y.S.2d 934. In *Genesee Hospital* the New York Appellate Court held that private physicians' offices would not meet the "used exclusively for hospital purposes" requirement for tax exempt status. *Genesee Hospital*, at 46, 364 N.Y.S.2d at 944. Although some benefit would come to the hospital in the form of much needed doctors and potential hospital patient referrals, the court held that the private offices performed services that were not for hospital purposes. *Id.* at 44, 364 N.Y.S.2d at 943. Rather, much of the services were purely private profit making activities. *Id.* at 46, 364 N.Y.S.2d at 944. Accordingly, the offices were denied tax exempt status. *Id.*

In *City of Long Branch*, the New Jersey Supreme Court also found that, although the physicians' offices might benefit the hospital, they were not used exclusively for hospital purposes. *City of Long Branch*, at 535, 351 A.2d at 762. With regard to hospital purposes, the court stated: "Utilization of these buildings for the private practice of medicine and dentistry is purely and simply a private profit making activity and is in direct competition with the privately owned commercial rental buildings and goes far beyond the traditional functions and purposes of a hospital." *Id.* The court went on to deny tax exempt status because use of the building for private professional offices was not reasonably necessary for hospital purposes. *Id.*

As in *Genesee Hospital* and *City of Long Branch*, the sale of the present building to physicians to be used as private offices does not constitute a hospital purpose. The purpose of selling to private physicians was to make a profitable return on a financial investment. The building

---

**2.** Furthermore, under Ind.Code § 16–12.1–3–2 consent is required only when hospitals or arguably when their alter egos act. We note, also, that neither party has raised and we offer no opinion as to whether hospitals and their foun-

dations are generally empowered to make financial investments in real estate ventures. The applicability of the consent requirement of Ind. Code § 16–12.1–3–2 was the only issue raised.

was not to be used for the provision of hospital services. Rather, the building was to be used to carry out several physicians's private practices and to insure a steady profit to HCH Foundation and HCH. Furthermore, provision of services at a doctor's office is not generally recognized as provision of hospital services. Therefore, HCH and HCH Foundation's actions are not covered by Ind.Code § 16–12.1–3–2.

■ PCH argues that the issue of the applicability of the definition of "hospital purposes" was waived on appeal. An issue can be waived if a party fails to raise the issue at trial or in the assignment of errors. *Larabee v. Booth* (1984), Ind.App., 463 N.E.2d 487, 491; *Indiana Insurance Co. v. Sentry Insurance Co.* (1982), Ind. App., 437 N.E.2d 1381, 1387–88. In the present case, the issue of the statute's applicability to the enjoined conduct was not waived. HCH and HCH Foundation raised the issue of the project's purpose at trial and raised the issue of the applicability of Ind.Code § 16–12.1–3–2 based on the definition of hospital purposes. Record at (i), 175, 204 and 206. Therefore, PCH's waiver argument is without merit, and accordingly, we reverse the grant of the preliminary injunction.

*Issue Two*

■ HCH and HCH Foundation next argue that the trial court's finding that defendants were in indirect contempt of court was contrary to law and an abuse of discretion. The punishing or refusal to punish for contempt of court is in the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 37. In order to punish a person for indirect contempt of court there must be an order or decree commanding the accused to do something or to refrain from doing something. *Id.* Furthermore, the accused must know of the order and must violate it while in force. *Id.*

Defendants argue that they cannot properly be held in contempt because the August 6th temporary restraining order either lapsed on August 16th under Trial Rule 65 or August 19th when venue was perfected. The defendants' argument is unfounded. The August 6th order was continued by Judge Vaughn at the August 12th hearing. Defendant had notice of and was present with counsel when the August 12th order was issued. The order specifically stated that the temporary restraining order would remain in effect, "until further order of selected special judge or judge of the county to which this cause is venued." Accordingly, the temporary restraining order did not dissolve after ten (10) days or on the day the new judge obtained jurisdiction. Therefore, the order was in effect when defendants resumed construction.

■ Defendants next argue they cannot be held in contempt because the grant of the temporary restraining order and continuance were erroneous. Although a defendant cannot be held in contempt of a void order, a defendant may be held in contempt of an erroneous order. *Jackson v. Farmers State Bank* (1985), Ind.App., 481 N.E.2d 395, *trans. denied;* 17 Am.Jur.2d *Contempt* §§ 42, 43 (1979). An order is void if made by a court that lacks jurisdiction, and is erroneous if unenforceable on appeal based upon non-jurisdictional irregularities. 17 Am.Jur.2d *Contempt* § 42 (1979). Accordingly, a defendant may not challenge a contempt finding based upon the prior order's non-jurisdictional irregularities. *Jackson*, at 402. A party must follow an erroneous order. The only remedy from an erroneous order is appeal and disobedience thereto is contempt. *Id.* Since HCH and HCH Foundation do not challenge Judge Vaughn's jurisdiction to render the order, they were properly held in indirect contempt of court. Therefore, we find no abuse of discretion and affirm the trial court's finding of contempt, and ordering of fines and costs.

The trial court's grant of a preliminary injunction was improper because Ind.Code § 16–12.1–3–2 does not apply to the conduct of HCH and HCH Foundation. Therefore we reverse. The trial court's finding of indirect contempt by HCH and HCH Foundation was proper. Therefore we affirm.

Reversed in part and affirmed in part.

Costs assessed against appellee.

### ON PETITION FOR REHEARING

On petition for rehearing the Appellees Frank Ross, James Malayer, Charles Whitaker, Keith Ernst and John Long, as members of the board of trustees of the Putnam County Hospital challenge our published opinion of *Carson v. Ross* (1987), Ind.App., 509 N.E.2d 239. Appellees raise six (6) issues in their petition, numbered one (1) through five (5). However, none of

the issues raised merits the grant of a rehearing. The issues numbered one (1) and five (5) are the only issues that merit our discussion. Accordingly, the others are not discussed.

■ In issue number one (1), the appellees challenge the use of the adjective "mistakenly". The appellees are correct in noting that the trial court did not use this adjective in its findings. Thus, our use of the term was improper. However, just as appellees' misnumbering of the issues in the petition for rehearing has no bearing on the merit of the petition, our improper use of the adjective "mistakenly" in our fact recitation has no bearing and does not alter our prior opinion. We held that the construction of the building was not for "hospital purposes". Therefore, whether the advertisement was placed mistakenly or not is irrelevant to our decision and a rehearing is not required.

■ In appellees numbered issue five (5) they challenge the court's failure to address the question of whether HCH Foundation was the alter-ego of HCH. This issue was not addressed because it was irrelevant due to the manner in which the case was decided. Issues which are unnecessary to a full and fair determination of an appeal will not be addressed. *State ex rel. Clemens v. Kern* (1939), 215 Ind. 515, 20 N.E.2d 514; *Fort Wayne Patrolman's Benevolent Ass'n, Inc. v. City of Fort Wayne* (1980), Ind.App., 411 N.E.2d 630. Once we decided that the construction of the building was not for "hospital purposes" this issue became irrelevant. The decision on the applicability of Indiana Code section 16–12.1–1–2 was dispositive of the appeal. Therefore, the petition for rehearing is denied.

ROBERTSON and NEAL, JJ., concur.