Darrel G. ERB, Appellant,

v.

Shirley A. ERB, Appellee.

No. 66A03–0310–CV–421.

Court of Appeals of Indiana.

Oct. 6, 2004.

Steven M. Bush, Millbranth and Bush Valparaiso, IN, Attorney for Appellant.

Donald W. Shelmon, Rensselaer, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Darrel and Shirley Erb's marriage was dissolved in Pulaski Superior Court. Darrel appeals raising several issues; however, we conclude that the trial court's findings are insufficient to permit meaningful appellate review. Therefore, we remand this case to the trial court with instructions to include in its findings a more detailed calculation and division of the marital estate.

Remanded for proceedings not inconsistent with this opinion.

### Facts and Procedural History

Darrel and Shirley were married on July 28, 1989, and one child was born during the marriage. Darrel is employed full time as a grain farmer and Shirley is a teacher. In addition to farming leased land, Darrel farms three tracts of land owned by the parties situated in Pulaski and White Counties totaling approximately 375 acres. The marital residence is situated on 5.416 acres. In connection with the farming operation, the parties also own several pieces of farm equipment and machinery.

On September 4, 2001, Darrel filed a petition for dissolution of marriage. On October 9, 2001, the trial court entered a provisional order finding that the parties had agreed to share joint custody of their child, with Shirley having physical custody, and that Darrel agreed to pay $165 per week for child support. Darrel was also awarded temporary possession of the marital residence, farm acreage, and farming equipment.

The final hearing was held on May 5, 2003. Prior to the hearing, Darrel requested findings of fact and conclusions of law. On September 26, 2003, the trial court issued its findings of fact and conclusions of law and found in relevant part:

13. The parties own several parcels of real estate which were acquired during the course of the marriage.

14. The parties own a 220 acre tract of real estate located in White County, Indiana, having a fair market value of $352,346.00, and an indebtedness of $147,044 as of December 31, 2002.

15. The parties own a 40 acre and 114 acre tract of real estate in Pulaski County, Indiana, having a fair market value of $58,000 and $187,000, and indebtedness on both parcels in the amount of $138,215 in favor of Farm Credit Services.

16. The parties' marital residence consisting of residence, machine shed, pole barn, and other facilities located on 5.5 acres has a fair market value of $180,448.00 and an indebtedness of $44,243.00 in favor of Peoples State Bank.

\* \* \*

18. The parties have an interest in numerous pieces of farm machinery which has been used in the parties' farming operation.

19. That Gary Olsen appraised the farm equipment at a value of $225,385.00 and an additional $2,925.00 for other miscellaneous equipment.

20. [Darrel] valued his equipment at $320,000 and his vehicles at $60,000 on April 26, 2001 on a financial statement to the Farm Credit Services and on the January 29, 2001 financial statement to the Peoples State Bank.

21. The parties had debt secured by the equipment which was placed in detail on all of the financial statements prepared by [Darrel], the last of which stated that he owed $22,866 to Case Credit for a tractor, $19,969 on a combine, which was traded in for the new combine, and $17,000 on his pick-up truck.

\* \* \*

23. [Darrel] leased a dryer and a planter that had an option to purchase at the end of the lease and such leases had equity in each.

24. [Darrel] chose to purchase the dryer at the end of the lease for the sum of $4,050 on July 3, 2002, and such dryer had a fair market value of approximately $15,000.

25. None of the lease equipment was valued nor appraised by [Darrel], but does claim the same as a debt of the marriage.

\* \* \*

27. [Darrel] should be awarded all of the personal property and equipment he has utilized in the farming operation, which should be valued at $284,310 being the average of the value set forth on the financial statements prior to the filing of the

dissolution and the appraised value of the equipment.

* * *

31. [Darrel] has had inventory of grain on hand ranging from $415,605 in January of 2000 to $455,790 in April of 2001 just 4 months prior to the filing of this petition.

32. The 2001 crops were just ready to be harvested when the petition was filed.

33. [Darrel] stored crops harvested in 2001 and the same were either stored or sold in 2002.

34. [Darrel's] accountant, Doug Raderstorf, testified he was informed by [Darrel] that he had sold around $600,000 worth of grain in 2002, which sum is inconsistent with the amount he had sold in the previous years as reflected on his income tax returns.

35. The records obtained from Rose acres farms in Francesville Elevator and Reynolds Elevator revealed that [Darrel] had sold $600,339 worth of grain in the year 2002.

36. [Darrel] has the ability to control his income and thus his profit by holding grain to the next calendar year on his farming operation, even though he has also prepaid many expenses for the upcoming farming season.

37. The crops raised on the real estate just owned by the parties in the year 2002 based upon the average bushels per acre as reflected in the financial statements with one-half of the land being placed in beans and one-half in corn, projects that 31,762 bushels of corn and 7315 bushels of beans were raised having a total value of $129,618.

* * *

40. The sum of money in the farm account was consistent with the $188,000 [Darrel] reported having in January 2001. [Darrel] wrote checks totaling $145,000 within one month of the signing of the petition from which he prepaid his expenses, including rent not yet due until November, real estate taxes and crop expenses for the next farming season.

41. [Darrel] intentionally divested his cash funds immediately upon signing the Petition for Dissolution of Marriage and prepaid expenses for the 2002 crop, for which he now claims [Shirley] is not entitled.

42. [Darrel] should be charged with the funds he had on hand at the time of the signing of the petition.

43. [Darrel] cannot utilize all of the cash assets to prepay his farming expenses for the next growing season and then suggest that the crops raised there from should not be split nor considered in the division of the property with [Shirley].

44. The Parties have a farm toy collection that was valued by the parties and an appraiser and the Court finds that the value of the collection should be established at the sum of Fifteen Thousand Five Hundred Dollars ($15,500), being the sum represented by the Parties and reflected on their financial statements and which sum is about the average of all of the reported values ranging from $20,000.00 by [Shirley] and $8,000.00 by the appraiser.

Appellant's App. pp. 104–07.[1]

The trial court concluded that the total net value of the marital estate was $1,492,742. In order to provide for an equal division of the marital estate, the court awarded to Shirley 1) the personal property and debts in her possession, 2) the White County farm ordering Darrel to remove and pay any indebtedness associated with the farm, and 3) a judgment in the amount of $394,027. Appellant's App. p. 109. Darrel was also ordered to pay child support in the amount of $175 per week and Shirley's attorney fees and costs in the amount of $20,000. Appellant's App. p. 108. Darrel appeals.

## Discussion and Decision

 Darrel requested findings of fact and conclusions of law pursuant to Trial Rule 52(A), which provides in relevant part: "[u]pon ... the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury ... shall find the facts specially and state its conclusion thereon." Ind. Trial Rule 52(A) (2004). Such findings should contain all of the facts necessary for a judgment for the party in whose favor conclusions of law are found. *Moore v. Moore*, 695 N.E.2d 1004, 1008 (Ind.Ct.App.1998); *see also In re Estate of Inlow*, 735 N.E.2d 240, 250 (Ind.Ct. App.2000) ("Special findings must contain all facts necessary to recovery by a party and the ultimate facts from which the court has determined the legal rights of the parties."). Further, "Trial Rule 52(A) 'is a method for formulating the ruling of the trial court, providing more specific information for the parties, and establishing

a particularized statement for examination on appeal.'" *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998) (quoting *Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind. 1995)).

 In dissolution proceedings in cases involving marital estates with considerable assets and debts, the trial court's careful calculation of the net martial estate in its findings of fact and conclusions of law facilitates our review on appeal. In this case, the trial court failed to include such a calculation in its findings. Utilizing the trial court's findings, we have attempted to calculate the net marital estate, but are unable to determine how the trial court reached its total of $1,492,742.

The trial court's failure to provide our court with its calculation of the marital estate has substantially hindered our review of certain issues presented in this appeal. For example, despite the trial court's findings numbered thirty-one through thirty-seven, we cannot conclude with any reasonable certainty which crops the trial court included in the net marital estate, a contested issue at trial and in this appeal. In his brief, Darrel argues that the 2002 crop should not have been included in the marital estate, but Shirley contends that the trial court "did not award any amount of the 2002 crop" to her. Br. of Appellant at 14; Br. of Appellee at 12. Because the trial court did not provide a calculation of the marital estate and our own calculations do not reveal how the trial court reached its conclusion that the net marital estate totals $1,492,742, we cannot determine whether the trial court considered the 2002 crop, or any portion of it, to be an asset of the marital estate.[2]

---

**1.** In addition to the assets and debts described in the findings quoted above, the parties had additional assets including bank accounts, life insurance, 401(k) plans, an annuity, a pen-

sion, a van, and household items. Also, Shirley had credit card debt and a student loan.

**2.** We are also troubled by the fact that the trial court listed the amount of grain in inven-

As we stated above, Darrel requested special findings pursuant to Trial Rule 52(A), and it is well established that such findings "must contain all facts necessary to recovery by a party and the ultimate facts from which the court has determined the legal rights of the parties." *See In re Estate of Inlow,* 735 N.E.2d at 250. The trial court's findings do not contain all facts necessary to establish how the court arrived at a total net marital estate of $1,492,742 and are therefore insufficient to permit meaningful appellate review. Accordingly, we remand this case to the trial court with instructions to include its calculation of the Erbs' marital estate in its findings of fact and conclusions of law.

Remanded for proceedings not inconsistent with this opinion.

DARDEN, J., and FRIEDLANDER, J., concur.

tory or sold during the years between 2000 and 2002, but did not make any findings with regard to the expense of producing those crops.