**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**PRESTON T. BREUNIG**
**MARTHA L. WESTBROOK**
Buck Berry Landau & Breunig P.A.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CHRISTOPHER M. GILLEY**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD R. HOGSHIRE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1312-DR-513 |
| | ) | |
| URSULA HOOVER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1202-DR-74

**October 9, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Richard R. Hogshire (Husband), brings this interlocutory appeal challenging the trial court's Findings of Fact, Conclusions of Law and Judgment (Judgment), in which it held Husband in contempt for failing to pay Appellee-Respondent, Ursula Hoover (Wife), in accordance with prior Provisional Orders.

We affirm and remand.

## ISSUES

Husband raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by holding Husband in contempt; and

(2) Whether Husband is obligated to pay Wife's attorney fees in light of our court's reversal of the Provisional Orders underlying the contempt action.

## FACTS AND PROCEDURAL HISTORY

On January 5, 2012, Husband filed a petition to dissolve his fourteen-year marriage to Wife. In response, Wife filed a counter-petition for divorce on January 13, 2012. Husband and Wife, who are seventy-seven and seventy-five years old, respectively, do not have any children together. The lion's share of the marital assets consists of the marital residence in Indianapolis, Indiana, as well as several businesses in Husband's name.

Following the parties' cross-petitions for dissolution, on April 30, 2012, the trial court conducted a provisional hearing and received evidence regarding the financial circumstances of both Husband and Wife. The next day, the trial court issued a provisional order (Provisional Order #1), which awarded temporary possession of the marital residence

2

to Husband. Provisional Order #1 also required, in part, that Husband pay $300 per month to Wife in temporary maintenance and that he provide her with $5,000 in order to retain a business valuation expert.

On October 9, 2012, Wife filed a petition for emergency relief and modification of Provisional Order #1. On November 16, 2012, after a second provisional hearing, the trial court issued a modified provisional order (Provisional Order #2), which extinguished Husband's obligation to make monthly maintenance payments. Instead, the trial court awarded Wife temporary possession of the marital residence and ordered Husband to pay all of the expenses related thereto, including the mortgage payment. In addition to maintaining its initial order that Husband pay $5,000 for a business valuation expert, the trial court, acting *sua sponte*, also ordered Husband to pay $10,000 toward Wife's attorney fees. On November 21, 2012, Husband filed a motion for the trial court to reconsider its ruling, which the trial court denied on November 30, 2012.

On December 17, 2012, Husband filed his first interlocutory appeal, challenging the trial court's award of $15,000 in preliminary fees and costs. *See Hogshire v. Hoover* (*Hogshire I*), 2013 WL 6198238 (Ind. Ct. App. Nov. 27, 2013). On January 7, 2013, Husband asked for a stay of Provisional Order #2 pending appeal, which the trial court granted on February 4, 2013, subject to the condition that Husband post a $7,500 bond. Husband concedes that he never posted this bond.

At some point after the issuance of Provisional Order #2, Husband and Wife sold the marital residence and deposited the proceeds into an escrow account for division at the final hearing. No longer able to live in the marital residence at Husband's expense, Wife

filed a petition to modify Provisional Order #2 on May 16, 2013. Following a third provisional hearing on June 24, 2013, the trial court issued Provisional Order #3 on September 6, 2013. In Provisional Order #3, the trial court ordered Husband to pay weekly maintenance of $750 to Wife, as well as to pay all of the outstanding fees for the completion of the business valuation. Ten days later, Husband filed his second interlocutory appeal to challenge the rulings of Provisional Order #3. *See Hogshire v. Hoover* (*Hogshire II*), 2014 WL 2927270 (Ind. Ct. App. June 27, 2014). Again, Husband requested a stay pending appeal, which the trial court denied on October 1, 2013.[1]

On September 24, 2013, following Husband's failure to remit his first two maintenance payments, Wife filed a motion for rule to show cause, alleging Husband to be "willfully and intentionally in contempt of" Provisional Order #3. (Appellant's App. p. 21). Then, on October 3, 2013, Wife filed a second petition for contempt, claiming that Husband never posted the $7,500 cash bond required to stay his obligation to pay $15,000 per Provisional Order #2. In addition to requesting that the court enforce Husband's compliance with the terms of both Provisional Orders, both of Wife's petitions included a demand for attorney fees incurred as a result of prosecuting the contempt. On October 25, 2013, the trial court conducted a hearing, during which both parties testified regarding their financial circumstances. Husband stipulated to the fact that he has not made payments in accordance with either of the Provisional Orders but asserted that his actions did not constitute contempt based on his financial inability to comply. Wife, however, insisted

---

[1] On October 25, 2013, our court denied Husband's emergency motion to set an appeal bond and for a stay pending appeal.

that Husband's financial declaration fails to reflect the full extent of his available funds and that he is capable of making the maintenance, attorney fee, and business valuation payments as ordered.

On November 5, 2013, the trial court entered its Judgment. In holding Husband in contempt, the trial court determined that "[h]e is willfully rejecting his responsibility to pay for [W]ife's [business valuation] expert and to pay her maintenance." (Appellant's App. p. 15). As a result, the trial court ordered Husband to pay $4,000 for the attorney fees Wife incurred in bringing the contempt action. Also, the trial court ordered that the escrowed proceedings from the sale of the marital residence be used to satisfy Husband's obligation under Provisional Order #2 in the amount of $15,000, as well as for any maintenance payments owing under Provisional Order #3.

On November 27, 2013, our court rendered its decision in *Hogshire I*, holding that although it is permissible for a trial court to *sua sponte* award $10,000 in attorney fees, the trial court had abused its discretion by doing so in Provisional Order #2 without first hearing evidence on Husband's financial circumstances. We remanded to the trial court for an examination of the parties' resources. Seven months later, we issued our decision in *Hogshire II*. There, we reversed the portion of Provisional Order #3 requiring Husband to pay $750 in weekly maintenance "and remand[ed] with instructions to modify the maintenance award taking into account Husband's earnings, living expenses, and other obligations imposed by the court's provisional orders." *Hogshire II*, 2014 WL 2927270, at *4. We further concluded that the trial court had abused its discretion by ordering

5

Husband to pay for the outstanding and future fees of the business valuation expert based, in part, on Husband's inability to pay.

Husband now appeals.[2] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Where, as here, a party requests special findings and conclusions under Indiana Trial Rule 52(A), our two-tiered standard of review is well established. First, we consider whether the evidence supports the findings; second, we determine whether those findings support the trial court's judgment. *Maxwell v. Maxwell*, 850 N.E.2d 969, 972 (Ind. Ct. App. 2006), *trans. denied*. On review, our court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We will find clear error "only where there is no evidence supporting the findings or the findings do not support the judgment." *Maxwell*, 850 N.E.2d at 972. Findings are clearly erroneous "only when a review of the record leaves us firmly convinced a mistake has been made"; a judgment is clearly erroneous where "it relies on an incorrect legal standard." *Id.* We will not reweigh evidence, and we consider only the evidence most favorable to the trial court's judgment. *Id.*

---

[2] Husband filed his Notice of Appeal in the present case on December 4, 2013—after *Hogshire I* was decided, but prior to *Hogshire II*. Regardless, at the time the trial court issued its Judgment, both Provisional Orders remained in full force and effect.

When a request is made pursuant to Indiana Trial Rule 52(A), the trial court must "make complete special findings sufficient to disclose a valid legal basis under the issues for the legal result reached in the judgment." *Id.* Findings and conclusions serve to provide both the parties and appellate courts "with the theory upon which the case was decided." *Id.* As such, the trial court's findings must "contain all of the facts necessary for a judgment for the party in whose favor conclusions of law are found." *Erb v. Erb*, 815 N.E.2d 1027, 1030 (Ind. Ct. App. 2004).

## II. *Contempt*

Husband claims that the trial court erred in holding him in contempt for violating the Provisional Orders. Contempt "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). Determining whether a party is in contempt of a court order is a matter reserved to the sound discretion of the trial court. *Cowart v. White*, 711 N.E.2d 523, 530-31 (Ind. 1999). We will reverse a contempt finding only where no evidence or inferences to be drawn from the evidence support it. *Id.* at 531.

"Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Evans v. Evans*, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002). Because contempt proceedings are meant "to vindicate the courts' dignity and to enforce litigants' rights pursuant to court orders[,]" the propriety of a court's order is generally irrelevant in deciding whether a party willfully defied it. *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997). That said, we note the distinction between *void* and *erroneous* orders. If an order is issued by a court that lacks

7

jurisdiction, that order is void and may not serve as the basis of a contempt citation. *Carson v. Ross*, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), *trans. denied*. On the other hand, an order is merely erroneous if an appellate court deems it unenforceable "based upon non-jurisdictional irregularities." *Id.* "[A]n erroneous order must be obeyed unless and until reversed on appeal. A party's remedy for an erroneous order is appeal; disobedience of the order is contempt." *Martin v. Martin*, 771 N.E.2d 650, 653 (Ind. Ct. App. 2002) (internal citation omitted).

In the present case, the fact that our court ultimately reversed the mandates set forth in both Provisional Orders is of no import in our review of Husband's contempt citation. As Husband has not raised any jurisdictional arguments, he may not now "challenge a contempt finding based upon the prior [Provisional Orders'] non-jurisdictional irregularities." *Carson*, 509 N.E.2d at 243. The question before our court is simply whether Husband willfully failed to comply with the Provisional Orders.

The uncontroverted evidence establishes that Husband was aware of his obligations set forth in the Provisional Orders and, as the trial court found, that he "failed to pay the $15,000 or even any fraction thereof" and also "failed to make the $750.00 per week maintenance payments to Wife . . . except for one $749.71 payment to Wife after October 14, 2013 arising from the endorsement of a check refund to Husband from Privacy Guard." (Appellant's App. pp. 11-12). Nevertheless, Husband maintains that his actions do not constitute contempt. Rather, he insists that "he does not have the financial ability to comply with the trial court's order to pay the [$5,000] to Wife's valuation expert and [$10,000] in preliminary attorney fees . . . or the [$750] per week payments to Wife, or the unspecified

8

dollar payment to [the business valuation expert]." (Appellant's Br. p. 19). According to Husband, this "impossibility of performance" precludes the finding of contempt. (Appellant's Br. p. 19). "Where a person seeks to show the court that his failure to obey an order was due to an inability to render obedience, the burden is on him to establish this fact." *Head v. Comm'r, Ind. Dep't of Envtl. Mgmt.*, 626 N.E.2d 518, 526 (Ind. Ct. App. 1992), *reh'g denied, trans. denied*. To this end, Husband asserts that the trial court's findings are insufficient to uphold the contempt.

In particular, Husband employs Indiana Trial Rule 52(B) to argue that the trial court's factual findings are "lacking, incomplete, inadequate in form or content or do not cover the issues raised by the pleadings or evidence." T.R. 52(B)(2). We, however, find that Husband's reliance on Trial Rule 52(B) is misplaced. This rule provides that a trial court—either "[u]pon its own motion at any time before a motion to correct errors (Rule 59) is required to be made, or with or as part of a motion to correct errors by any party"— may open a judgment, hear additional evidence, modify or make additional findings, enter a new judgment, "or any combination thereof if . . . special findings of fact required by this rule are lacking, incomplete, inadequate in form or content or do not cover the issues raised by the pleadings or evidence." T.R. 52(B)(2). It is clear that Trial Rule 52(B) provides the trial court with authority to cure any deficiencies in its findings prior to the filing of an appeal. *See Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221-22 (Ind. Ct. App. 1998). In the present case, Husband did not seek redress by raising the issue of incomplete or inadequate findings in a motion to correct error and requesting that the trial court amend its findings; thus, Trial Rule 52(B) is inapplicable. *See Blakley Corp. v. EFCO Corp.*, 853 N.E.2d 998,

9

1005 (Ind. Ct. App. 2006). Accordingly, we will adhere to the customary two-tiered standard of review set forth in Trial Rule 52(A).

In holding Husband in contempt, the trial court concluded that

> Husband has been paying credit cards rather than for his Wife's business valuation expert. He did so willfully and could have paid the money instead towards [law]suit expenses or his ill [W]ife's maintenance. Husband has willfully acquired an expensive apartment instead of remaining in place where his rent was much less or instead inhabited a less expensive apartment. He did this on purpose, instead of paying for the expert or the maintenance. Husband earns, with social security benefits[,] nearly $7,700.00 per week and retains in his employ a bookkeeper at $1,000.00 per week who does nothing more for the business than what Husband can do. He is willfully rejecting his responsibility to pay for [W]ife's expert and to pay her maintenance. By simply letting go of his unnecessary assistant[,] he could[,] with those savings alone, cover maintenance.

(Appellant's App. p. 15).

First, Husband contends that the trial court's finding that he earns "$7,700.00 per *week*" is clearly erroneous. (Appellant's App. p. 15 (emphasis added)). Although we agree with Husband that this finding is technically inaccurate, we find this error to be immaterial to the Judgment. In at least three additional findings, as well as a footnote, the trial court indicates that Husband's *monthly*—rather than weekly—income totals $7,687.67. Moreover, the parties are in agreement that Husband earns a biweekly salary of $2,524.15 and monthly social security benefits of $2,219. Because it is clear that the trial court's isolated reference to Husband's weekly income is an unintended oversight, the error does not merit reversal.

Husband next contends that the trial court's finding that he moved into a more expensive apartment in order to evade his obligations is erroneous. Specifically, the trial

court found that "[p]rior to moving into an apartment recently, Husband was living with a neighbor or his son. At such places[,] he lived either rent-free, or was possibly paying $300-400 per month, or possibly paid his rent through providing his neighbors cases of wine." (Appellant's App. p. 13). The trial court also found that, by the time of the contempt hearing, Husband had moved to "an apartment where the rent is $1,450 per month, utilities are $85 per month . . . [,] and cable internet is $115 per month for a total cost [of] $1650 per month. This is a lot more than what he had been paying." (Appellant's App. p. 13). On appeal, Husband argues,

> At the time of the [contempt] hearing, [he] was living in the same apartment in which he was living at the time of the [third provisional] hearing when there was no maintenance order in place. He did not move between the [third provisional hearing on] June 24, 2013 and the [contempt] hearing on October 25, 2013.

(Appellant's Br. p. 20).

We first note that Husband's declaration is unsupported with a citation to the record. Ind. Appellate Rule 46(A)(8)(a). Also, the transcript of the third provisional hearing is not before this court to ascertain whether Husband's living arrangements were discussed at that time. Furthermore, the trial court's finding is consistent with the only evidence in the record. During the contempt hearing, Wife testified that Husband had been living with his son, and when his neighbors went to Florida, Husband lived in their house for "six months or seven months." (Transcript p. 17). She further testified that, in addition to his report that he sometimes paid $300 or $400 in rent, Husband "supplies the neighbors with [cases of] wine from his restaurant all year long." (Tr. p. 18). Conversely, Husband neither

11

challenged Wife's testimony, nor presented contradictory evidence of his housing situation. Therefore, we find no error in the trial court's finding.

Finally, Husband disputes the trial court's finding that he "could have paid the maintenance he was required, but has chosen not to do so." (Appellant's App. p. 13). According to Husband,

> It is pellucid based on the trial court's own numbers[] [that] Husband does not have the ability to pay maintenance in the amount ordered, plus the [$15,000] ordered [in Provisional Order #2], the monies to [the business valuation expert] ordered [in Provisional Order #3], or the [$4,000] in fees ordered to [Wife's attorney] [in the Judgment].

(Appellant's Br. p. 21).

Along with the $1,650 budgeted for Husband's apartment and utilities, the trial court found that Husband has the following expenses:

> a. $192 per month for Wife's health insurance;
> b. $433 per month car payment;
> c. $450 per month for groceries and sundries;
> d. $25 per month for clothing;
> e. $1000 annually for car insurance ($83.33 per month); and
> f. $300 annual uninsured medical expenses ($25 per month);
> which expenses total $1208.33 per month.

(Appellant's App. p. 13). Additionally, the trial court found that Husband makes the following credit card payments: $527 to MasterCard, $333 to First Merchants Bank, $520 to Bank of America, and $500 to American Express, and that "Husband has entered into [an] installment payment agreement with the IRS of $1000.00 per month." (Appellant's App. p. 14). All told, the trial court's findings indicate that after paying his expenses of

12

$5,738.33, Husband is left with $1,949.34 each month.[3] Husband also submitted evidence regarding the financial state of his companies to demonstrate "that there was no money in the businesses from which . . . [he] could distribute funds to make the payments ordered." (Appellant's Br. p. 22).

At first glance, Husband's defense to contempt is sustainable. Notwithstanding the fact that Husband also owes attorney fees of $63,479.21, his disposable income is clearly insufficient to cover $3,225 in monthly maintenance, as well as more than $15,000 in additional fees. Nonetheless, our review is deferential to the trial court's determinations of evidentiary value and witness credibility. *See MacIntosh v. MacIntosh*, 749 N.E.2d 626, 629-31 (Ind. Ct. App. 2001), *trans. denied*. Here, the findings reflect the trial court's skepticism as to Husband's candor about his finances. At the contempt hearing, Wife testified that Husband used to bring "brown paper bag[s]" full of cash into the house, but the sudden cessation of the cash flow coincided with her request for a divorce. (Tr. p. 15). The trial court

> believe[d] that Wife saw bags of cash. How much was in them is speculative. Wife does not really know anything about her [H]usband's businesses. . . . Husband is certainly economically resourceful. . . . Crafty as he is and in control of all the information about his business, certainly there is a question about what the business is worth. Wife has no way of knowing. An expert is needed.

(Appellant's App. p. 13). The trial court also considered that Husband has been "recalcitrant in his efforts to slow-play the process" and found that his "nonpayment of

---

[3] Husband's September 2013 bank statement indicates that he made a $500 payment to American Express, but he testified during the contempt hearing that the balance of this credit card, which "was in the area of six to seven thousand dollars[,]" has been paid in full. (Tr. p. 75). Without this payment obligation, Husband's monthly surplus is actually $2,449.34.

13

fees to address the basic issue in this divorce—what is the business worth?—has been inexcusable." (Appellant's App. p.12). Acknowledging that "Wife's dithering with multiple counsel [has] not helped the case along," the trial court stated,

> [M]ostly the problem is that Husband—who has (1) a lawyer who does not insist that his bills get paid even though he owes him over $63,000.00[,] (2) a $52,000.00 bookkeeper who does nothing for the business that Husband could not do[,] and (3) nearly $7,700 of verifiable monthly income—won't cough up the money to allow a professional to do the work necessary to complete the valuation work.

(Appellant's App. p. 12). Thus, according to the trial court, Husband has the means to comply with the Provisional Orders, but he instead opted to pay off credit cards, obtain more expensive housing, and maintain a bookkeeper on his payroll.

Without forcing Husband to live with his son or to terminate an employee of twenty years, we uphold the trial court's finding of contempt. The evidence and findings demonstrate that Husband has not satisfied his burden of proving a *complete* inability to comply. Despite having nearly $2,500 of excess income each month (and potentially more), nothing in the record evinces a good faith effort by Husband to comply with the Provisional Orders. By declining to even make partial payments or, at the very least, contacting the business valuation expert, Husband's behavior evinces a willful defiance to the trial court's authority rather than simply a financial hurdle. *See Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind. Ct. App. 2002); *Head*, 626 N.E.2d at 526. Because the propriety of the Provisional Orders was only established with the *Hogshire I* and *Hogshire II* decisions, Husband did not have the prerogative to simply disregard the trial court's mandates. Accordingly, we find that the trial court's findings sufficiently support a determination of

14

contempt. However, in the interest of consistency, we remand with instructions for the trial court to revise the amounts of maintenance and other fees, as stated in the Judgment, in accordance with our holdings in *Hogshire I* and *Hogshire II*.[4]

### III. *Attorney Fees*

Husband also claims that the trial court's award of attorney fees should be reversed in light of *Hogshire I*. Because the finding of contempt was based on Husband's non-compliance with an order that has since been overturned on appeal, he asserts that "it is unfair to . . . require him to pay the [$4,000] in attorney fees" as it serves to "punish[] him for appealing [Provisional Order #2] when he did not have the money to post a cash bond." (Appellant's Br. p. 28). We disagree.

The fact that the Provisional Orders were reversed on appeal does not negate the fact that Husband willfully violated their terms while they remained in full force in effect. "Without regard to economic resources, once a party is found in contempt, the trial court has 'the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions.'" *Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999) (quoting *Crowl*, 678 N.E.2d at 832). Here, Wife incurred more than $4,000 in attorney fees related to the contempt action; therefore, we find that the trial court properly exercised its authority to compensate her with an award of attorney fees.

### CONCLUSION

---

[4] Husband also contends that the trial court erred in concluding that the escrowed proceeds from the sale of the marital residence should be used to pay the fees. Although it appears that Husband's argument relates to the prejudicial impact of disbursing these funds prior to the final hearing, he does not support his claim with cogent reasoning or citations to authority, thereby waiving this argument under Indiana Appellate Rule 46(A)(8)(a).

15

Based on the foregoing, we conclude that the trial court did not err in holding Husband in contempt and ordering him to pay Wife's attorney fees based on his willful disobedience of the Provisional Orders; however, we remand to the trial court with instructions to revise the Judgment such that the stated amounts of maintenance and other fees are consistent with our remand instructions in *Hogshire I* and *Hogshire II*.

Affirmed and remanded.

MATHIAS, J. and CRONE, J. concur